**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Thomas A. Reyda (State Bar No. 312632)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
            jsmith@bursor.com
            treyda@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW BLAND, on behalf of himself and all others similarly situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>SEQUEL NATURAL LTD. D/B/A VEGA and WHITEWAVE FOODS CO.<br><br>                              Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Andrew Bland ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following against Defendants Sequel Natural LTD. d/b/a Vega and WhiteWave Food Co. (collectively, "Defendants") on information and belief, except that Plaintiff's allegations as to his own actions are based on personal knowledge.

## NATURE OF THE ACTION

1.      This action seeks to recover damages and remedy Defendants' continuing failure to warn individuals that Vega Protein Powders and Protein Shakes (collectively, the "Vega Products") expose consumers to heightened levels of lead and cadmium.

2.      Even worse, Defendants label and market the Vega Products with health based representations like the following:  "discover the full potential of plant-based nutrition"; "real, plant-based foods – like plant protein, greens, chia seeds, and so much more – helped him recover between training sessions better than any supplement he'd ever tried"; "made with REAL plant-based FOOD ingredients"; and "Ingredients with Purpose."[1]

3.      Unfortunately for consumers, the heightened levels of lead and cadmium found in the Vega Products are known by the State of California to cause cancer, birth defects, and other health risks.  The amount of these toxic heavy metals present in a single serving of the Vega Products is sufficient to expose consumers to a substantial risk of birth defects and other reproductive harm.  Indeed, the amount of heavy metals in the Vega Products violates California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65")."

4.      Despite the heightened levels of toxic heavy metals present in the Vega Products, Defendants provide no warning whatsoever about their presence, or the health risks, birth defects and reproductive harm associated with their consumption.

5.      As described more fully below, consumers who purchase the Vega Products are injured by Defendants' acts and omissions concerning the presence of heightened levels of lead and cadmium.  No reasonable consumer would know, or have reason to know, that the Vega Products contain heightened levels of heavy metals.  This information is within the exclusive knowledge of

[1]*Available at*  https://myvega.com/collections/all (last visited 8/3/2018)

Defendants and is not known to ordinary consumers, including Plaintiff and members of the putative classes.  As such, Plaintiff seeks relief in this action individually and as a class action on behalf of all purchasers of Defendants' products that contained similar amounts of heavy metals.

**PARTIES**

6.       Plaintiff Andrew Bland is a resident of Berkeley, California and a citizen of the State of California.  Around February of 2017, Plaintiff purchased the Vega Essentials Protein Powder from a CVS pharmacy.  Plaintiff is a health-conscious individual who purchased Vega Essentials Protein Powder because it promised to deliver protein and other nutrients "made with real plant-based food ingredients."[2]  In purchasing the Vega Essential Protein Powder, Mr. Bland relied on Defendants' false, misleading, and deceptive marketing of the Vega Products as a healthy product.  Had Defendants disclosed, on the label or otherwise, that the Vega Product contained high levels of lead and cadmium, Mr. Bland would have been aware of that, and would not have purchased the Vega Essentials Protein Powder.  However, Plaintiff remains interested in purchasing a healthy safe protein powder and shake product, and would consider the Vega Products in the future if Defendants removed the heightened levels of lead and cadmium.

7.       Defendant Sequel Natural LTD. d/b/a Vega, is a Canadian Limited Liability company with its principal place of business in Burnaby, Canada.  Defendant Sequel Natural LTD manufactures, markets, and sells the Vega Products.

8.       Defendant WhiteWave Food Co. is a Delaware Corporation with its principal place of business in Broomfield, Colorado.  Defendant WhiteWave Food Co. through its wholly owned subsidiary Sequel Natural LTD d/b/a Vega manufacture, markets, and sells the Vega Products. There exists a unity of interest and ownership such that the separate personalities of the Defendant Sequel Natural LTD. and Defendant WhiteWave Food Co. no longer exist, and the treatment of the acts alleged herein as those of Sequel Natural LTD alone would produce an inequitable result.

---

[2] https://myvega.com/products/vega-essentials (last visited July 25, 2018)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction over this action pursuant to the Class

Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28

U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as

here: (a) there are 100 or more members in the proposed classes; (b) some members of the

proposed classes have a different citizenship from Defendant; and (c) the claims of the proposed

class members exceed the sum or value of five million dollars ($5,000,000) in aggregate.  *See* 28

U.S.C. § 1332(d)(2) and (6).

10.      Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants transact

significant business within this District, Plaintiff resides within this District, and a substantial part

of the events giving rise to Plaintiff's claims took place within this District.

**FACTS COMMON TO ALL CAUSES OF ACTION**

A.      **Lead and Cadmium are Toxic Heavy Metal that Increase Cancer Risks
        and Cause Reproductive Harm**

11.      The People of the State of California declared by initiative under Proposition 65

their right "[t]o be informed about exposures to chemicals that cause cancer, birth defects, or other

reproductive harm." Proposition 65, § 1(b).  To effectuate this goal, California's Proposition 65,

Health & Safety Code § 25249.5, et seq., prohibits exposing people to chemicals listed by the State

of California as known to cause cancer, birth defects or other reproductive harm above certain

levels without a "clear and reasonable warning," unless the business responsible for the exposure

can prove that it fits within a statutory exemption.

12.      Lead is dangerous to humans, and can affect almost every organ and system in the

body.  Lead accumulates in the body over time, and can lead to health risks and toxicity, including

inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, comas

and death.  Lead can also cross the fetal barrier during pregnancy, exposing the mother and

developing fetus to serious risks, including reduced growth and premature birth.  Lead and lead

compounds are subject to the clear and reasonable warning requirement regarding carcinogens

under Proposition 65.  *See* 27 C.C.R. 27001(c); Health & Safety Code § 25249.6.  Specifically, a Proposition 65 warning is required where a total daily intake of lead exceeds .5 mcg.

13.     Cadmium is also dangerous to humans and exposure can cause cancer of the lung and may cause cancer of the prostate and kidney. Cadmium can also cause birth defects or other reproductive harm.  Exposure to cadmium may harm the male reproductive system.  And exposure during pregnancy may affect a child's development.  Cadmium and cadmium compounds are subject to the clear and reasonable warning requirement regarding carcinogens under Proposition 65.  *See* 27 C.C.R. 27001(c); Health & Safety Code § 25249.6.  Specifically, a Proposition 65 warning is required where a total daily intake of lead exceeds 4.1 mcg.

14.     This Complaint does not allege a violation of Proposition 65.  Proposition 65 is relevant, however, to the extent it provides information concerning the material misrepresentations and omissions in violation of California's Consumer Protection laws, and guidance as to a reasonable consumer's purchasing decisions.  Reasonable consumers purchased the Products believing, among other things, that they were in compliance with all applicable California regulations and safe according to California regulatory thresholds.  Reasonable consumers across the country would not have purchased the Vega Products if they had known that they contained heightened lead and cadmium, or would have purchased them on different terms.

**B.     The Vega Products Contain Heightened Levels of Lead and Cadmium that Exceed the Maximum Allowable Dose**

15.     The Vega Products expose consumers to high levels of lead such that a single serving exceeds the reproductive toxicity limit set by Proposition 65.  The Vega Products also contain high levels of cadmium such that one to three servings exceed the reproductive toxicity limit.

16.     A single serving of Vega Essentials exceeds the daily limit for lead and cadmium consumption set by Proposition 65.

17.     A single serving of Vega Sport Performance Protein exceeds the daily limit for lead consumption set by Prop 65, while it only takes two servings of Vega Sport to exceed the daily limit for cadmium consumption.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

18.     A single serving of Vega All-In-Once exceeds the daily limit for lead consumption four times over and also exceeds the daily limit for cadmium consumption.  Two to three servings could exceed also the daily limit for cancer risk from arsenic consumption set by Proposition 65.

19.     A single serving of Vega Protein & Greens exceeds the daily limit for lead consumption set by Prop 65, while it only takes three servings of Protein & Greens to exceed the daily limit for cadmium consumption.

C.     **Defendants Failure to Disclose the Heightened Levels of Lead and Cadmium is a Misrepresentation and Material Omission**

20.     Defendants market and label the Vega Products with the health-based representations such as "made with REAL plant-based FOOD ingredients"; "Nutritional Shake"; and "Performance Protein."  Even the names of the Products convey a health branded representation – Essentials Shak, All-In-One, Protein & Greens all convey a uniform representation the Vega Products are healthy and provide consumers with what their bodies need.  The following images depict the Vega Products and the uniform, material Representations made on the Products:

 




21.     Unfortunately for consumers, the packaging of the Vega Products does not disclose that the Vega Products contain lead and cadmium.  Indeed, a single serving of every one of the Vega Products exceeds the .5 mcg/day allowable limit for lead, and most exceed the 4.1 mcg/day allowable limit for cadmium.

22.     Defendants are aware that consumers are concerned about potential reproductive toxicity in products.  Indeed, on the Vega website Defendants have a specific FAQ to address the question "Can I take Vega® Products if I am Pregnant or Breastfeeding?" [3]  But instead of disclosing the presence of the heightened levels lead and cadmium that are known to cause reproductive harm, Defendants direct consumers to consult with their "healthcare practitioner" because each person's "nutritional needs are unique when you are pregnant or breastfeeding[.]" [4]

23.     Consumers, like Plaintiff Bland, who purchase the health branded Vega Products are injured by Defendants' acts and omissions concerning the high levels of heavy metals in the Vega Products.  No reasonable consumer would know, or have reason to know, that the Vega Products contain heightened levels of heavy metals.  This information is within the exclusive knowledge of Defendants and is not known to ordinary consumers, including Plaintiff and members of the putative class.  Defendants actively concealed this material fact from consumers, including Plaintiff and members of the Class.

---

[3] *Available at* https://myvega.com/blogs/faqs (last visited August 2, 2018)
[4] *Id.*

**CLASS ACTION ALLEGATIONS**

24.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Vega Products (the "Class").  Excluded from the Class are persons who made such purchases for purpose of resale.

25.     Plaintiff also seeks to represent a Subclass of all Class Members who purchased the Vega Products in California (the "California Subclass").

26.     At this time, Plaintiff does not know the exact number of members of the Class; however, given the nature of the claims and the number of retail stores in the United States selling the Vega Products, Plaintiff believes that Class members are so numerous that joinder of all members is impracticable.

27.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

    a.   whether the Vega Products contain lead and in what amount;

    b.   whether lead is potentially dangerous in those amounts;

    c.   whether the Vega Products contain cadmium and in what amount;

    d.   whether cadmium is potentially dangerous in those amounts;

    e.   whether Defendants' conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

    f.   whether information concerning the amount of lead and cadmium in the Vega Products is material to a reasonable consumer;

    g.   whether a duty arose for Defendants to disclose the facts concerning the lead and cadmium in the Vega Products

    h.   whether Plaintiff and members of the Class are entitled to injunctive and other equitable relief;

    i.   whether Defendants misrepresented and/or failed to disclose material facts concerning the Vega Products;

j.   whether Defendants' conduct was unfair and/or deceptive;

k.   whether Defendants have been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon Defendants by Plaintiff and the Class;

l.   whether Defendants breached implied warranties to Plaintiff and the Class;

m.   whether Plaintiff and the Class have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

28.   Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased, in a typical consumer setting, a Vega Product and Plaintiff sustained damages from Defendants' wrongful conduct.

29.   Plaintiff will fairly and adequately protect the interests of the Class and have retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the Class or the Subclass.

30.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

31.   The prerequisites to maintaining a class action for equitable relief are met as Defendants has acted or refused to act on grounds generally applicable to the Class and the Subclass, thereby making appropriate equitable relief with respect to the Class and the Subclass as a whole.

32.   The prosecution of separate actions by members of the Class and the Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.  For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not.  Additionally, individual actions could be dispositive of the interests of the Class and the Subclass even where certain Class members are not parties to such actions.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CAUSES OF ACTION

### FIRST COUNT

**(Violation of California Business & Professions Code § 17200 *et seq.*,**
**Based on Fraudulent Acts and Practices)**

33.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein and, to the extent necessary, plead this cause of action in the alternative.

34.     Plaintiff brings this claim individually and on behalf of the members of the California Subclass under California law.

35.     Under California Business & Professions Code §17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

36.     Defendants have engaged, and continues to engage, in conduct that is likely to deceive members of the public.  This conduct includes, but is not limited to, failing to disclose that the Vega Products contain heightened levels of lead and cadmium.

37.     After reviewing the packaging for a Vega Product, Plaintiff purchased the Vega Product in reliance on Defendants' omissions and/or representations.  Plaintiff would not have purchased the Products at all, but for Defendants' false promotion of the Vega Products. Plaintiff and the Subclass have all paid money for the Vega Products. However, Plaintiff and the Subclass did not obtain the full value or any value of the advertised products due to Defendants' misrepresentations and/or omissions regarding the heightened levels of lead and cadmium. Accordingly, Plaintiff and the Subclass have suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

38.     By committing the acts alleged above, Defendants have engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of California Business & Professions Code §17200.

39.     In accordance with California Business & Professions Code §17203, Plaintiff seek an order: (1) enjoining Defendants from continuing to conduct business through its fraudulent conduct; and (2) requiring Defendants to conduct a corrective advertising campaign.

40.     As a result of Defendants' conduct, Plaintiff seek injunctive and restitutionary relief under California Business & Professions Code §17203

### SECOND COUNT
**(Violations of California Business & Professions Code §17200, *et seq.*, Based on Commission of Unlawful Acts)**

41.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein and, to the extent necessary, plead this cause of action in the alternative.

42.     Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendants.

43.     The violation of any law constitutes an unlawful business practice under California Business & Professions Code §17200.

44.     Defendants have violated §17200's prohibition against engaging in unlawful acts and practices by, inter alia, making the representations and omissions of material facts, as set forth more fully herein, and violating California Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, California Business & Professions Code §17200 et seq., California Health & Safety Code §110660, 21 U.S.C. §321, and by violating the common law.

45.     By violating these laws, Defendants have engaged in unlawful business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code §17200.

46.     Plaintiff purchased a Vega Product in reliance on Defendants' representations that the Vega Products were fit for consumption and based on the omissions as to the amount of lead and cadmium contained therein.  Plaintiff would not have purchased the Vega Products at all but for Defendants' representations and omissions.  Plaintiff and the Subclass have all paid money for the Vega Products.  However, Plaintiff and the Subclass did not obtain the full value, or any value, of the advertised products due to Defendants' misrepresentations and omissions regarding the Vega Products.  Accordingly, Plaintiff and the Subclass have suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

47.     In accordance with California Business & Professions Code §17203, Plaintiff seeks an order: (1) enjoining Defendants from continuing to conduct business through its fraudulent conduct; and (2) requiring Defendants to conduct a corrective advertising campaign.

48.     As a result of Defendants' conduct, Plaintiff seek injunctive and restitutionary relief under California Business & Professions Code §17203'

### THIRD COUNT
**(Violations of California Business & Professions Code §17200, *et seq.*, Based on Unfair Acts and Practices)**

49.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein and, to the extent necessary, plead this cause of action in the alternative.

50.     Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendants.

51.     Under Business & Professions Code §17200, any business act or practice that is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

52.     Defendants have engaged, and continue to engage, in conduct which is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.  This conduct includes failing to disclose that the Vega Products contain heightened levels of lead and cadmium.

53.     Defendants have engaged, and continue to engage, in conduct that violates the legislatively declared policies of: (1) California Civil Code §§1572, 1573, 1709, 1710, 1711 against committing fraud and deceit; (2) California Civil Code §1770 against committing acts and practices intended to deceive consumers regarding the representation of goods in certain particulars; (3) California Health & Safety Code §110660 and 21 U.S.C. §321 against misbranding food; and (4) Proposition 65. Defendants gain an unfair advantage over its competitors, whose labeling, advertising, and marketing for other similar products must comply with these laws.

54.     Defendants' conduct is substantially injurious to consumers.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have purchased the Vega Products at all but for Defendants' omissions regarding the levels of lead and

cadmium contained in the Vega Products. Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Defendants' conduct.  Since consumers reasonably rely on Defendants' representations and injury results from ordinary use of the Vega Products, consumers could not have reasonably avoided such injury. *Davis v. Ford Motor Credit Co*., 179 Cal. App. 4th 581, 597-98 (2009); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (outlining the third test based on the definition of "unfair" in Section 5 of the FTC Act).

55.     By committing the acts alleged above, Defendants have engaged in unfair business acts and practices which constitute unfair competition within the meaning of Business & Professions Code §17200.

56.     Plaintiff purchased a Vega Product as fit for consumption and its omissions regarding the heightened levels of lead and cadmium in the Products.  Plaintiff would not have purchased a Vega Product at all but for Defendants failing to disclose that they contained lead and cadmium in high quantities.  Plaintiff and the Subclass have all paid money for the Vega Products. However, Plaintiff and the Subclass did not obtain the full value of the advertised products due to Defendants' omissions and misrepresentations regarding the nature of said Vega Products. Accordingly, Plaintiff and the Subclass have suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

57.     In accordance with California Business & Professions Code §17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through its fraudulent conduct and further seeks an order requiring Defendants to conduct a corrective advertising campaign.

58.     As a result of Defendants' conduct, Plaintiff seeks injunctive and restitutionary relief under California Business & Professions Code §17203.

## FOURTH CLAIM FOR RELIEF

### (Violations of the California Consumer Legal Remedies Act)

59.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein and, to the extent necessary, plead this cause of action in the alternative.

1     60.    Plaintiff brings this claim individually and on behalf of members of the California

2  Subclass under California law.

3     61.    Plaintiff purchased a Vega Product for his own personal use.

4     62.    The acts and practices of Defendants as described above were intended to deceive

5  Plaintiff and members of the Subclass as described herein, and have resulted, and will result, in

6  damages to Plaintiff and member of the Subclass.  These actions violated, and continue to violate,

7  the California Consumers Legal Remedies Act ("CLRA") in at least the following respects:

8          a.   In violation of California Civil Code §1770(a)(5) of the CLRA, Defendants' acts

9               and practices constitute representations that the Products have characteristics, uses,

10              and/or benefits, which they do not;

11         b.   in violation of California Civil Code §1770(a)(7) of the CLRA, Defendants' acts

12              and practices constitute representations that the Products are of a particular quality,

13              which they are not; and

14         c.   in violation of California Civil Code §1770(a)(9) of the CLRA, Defendants' acts

15              and practices constitute the advertisement of the goods in question without the intent

16              to sell them as advertised.

17    63.    By committing the acts alleged above, Defendants have violated the CLRA.

18    64.    Plaintiff and Subclass members suffered injuries caused by Defendants'

19  misrepresentations and/or omissions because they were induced to purchase the Vega Products

20  they would not have otherwise purchased if they had known that they contained heightened levels

21  of lead and cadmium.

22    65.    In compliance with the provisions of California Civil Code §1782, Plaintiff Bland

23  sent written notice to Defendant Sequel Natural LTD on June 26, 2018, informing Defendant

24  Sequel Natural LTD of his intention to seek damages under California Civil Code §1750, *et seq.*.

25  Accordingly, Plaintiff Bland seeks damages from Defendant Sequel Natural LTD for its violations

26  of the CLRA.

27

28

66.     At this time, Plaintiff Bland does not seek damages from Defendant WhiteWave Food Co. for its violations of the CLRA.

67.     Plaintiff and the Subclass members are entitled to, pursuant to California Civil Code §1780, an order enjoining the above-described wrongful acts and practices of Defendant, the payment of costs and attorneys' fees, monetary damages from Defendant Sequel Natural LTD, and any other relief deemed appropriate and proper by the Court under California Civil Code §1780.

## FIFTH COUNT

### (Breach of Implied Warranty)

68.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein and, to the extent necessary, plead this cause of action in the alternative.

69.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

70.     The Uniform Commercial Code §2-314 provides that unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

71.     Defendants manufactured, marketed, and sold the Vega Products and represented that the Vega Products were fit for consumption by consumers.  Contrary to such representations, Defendants failed to disclose that the Vega Products were not fit for consumption as they contain heightened levels of lead and cadmium, toxic heavy metals known by the State of California to cause cancer and reproductive harm.

72.     Accordingly, Defendants breached the warranty implied in the contract for the sale of the Vega Products because it could not "pass without objection in the trade under the contract description," the goods were not "of fair average quality within the description," the goods were not "adequately contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promise or affirmations of fact made on the container or label."  *See* U.C.C. § 2-314(2) (listing requirements for merchantability).  As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

73.     Plaintiff and Class members purchased the Vega Products in reliance upon Defendants' skill and judgment in properly packaging and labeling the Vega Products.

74.     The products were not altered by Plaintiff or Class members.

75.     The products were defective when they left the exclusive control of Defendants.

76.     Defendants knew that the Vega Products would be purchased and used without additional testing by Plaintiff and Class members.

77.     The Vega Products were defectively designed and unfit for their intended purpose and Plaintiff and Class members did not receive the goods as warranted.

78.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class members have been injured and harmed because they would not have purchased the Vega Products if they knew the truth about the product and the product they received was worth substantially less than the product they were promised and expected.

## SIXTH COUNT

**(Strict Liability – Failure to Warn)**

79.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein and, to the extent necessary, plead this cause of action in the alternative.

80.     Defendants manufactured, marketed, sold, and/or distributed the Vega Products to consumers.

81.     The Vega Products that Defendants manufactured, marketed, sold, and/or distributed were defective in design and manufacturing.  Further, the Vega Products were defective when they left the control of the Defendants such that: (1) the Vega Products had heightened amounts of lead and cadmium; and (2) they were unreasonably dangerous, more dangerous than an ordinary consumer would expect, as they contain toxic heavy metals

82.     Defendants knew or should have known that the Vega Products contained a non-obvious danger in lead and cadmium. Defendants knew that Plaintiff and the Class would consume the products without first testing them for heavy metals. However, Defendants failed to warn

Plaintiff and members of the Class as to the adverse health effects that the Vega Products could have on them.

83.     The Products were expected to, and did reach, Plaintiff and other members of the Class without substantial change in condition.  The Vega Products Defendants manufactured, marketed, sold, and/or distributed were defective due to their levels of lead and cadmium and their inadequate warnings of the presence of these toxic heavy metals.

84.     Had Plaintiff and members of the Class been warned about the adverse health effects that the Vega Products posed to them, or were warned that the Vega Products contained heightened levels of lead and cadmium, toxic heavy metals, they would not have purchased the Products.

85.     As a direct and proximate result of the defective condition of the Vega Products as manufactured, marketed, sold, and/or distributed by Defendants, Plaintiff and other members of the Class have been injured, including an increased risk of exposure to heightened levels of lead and cadmium, toxic heavy metals which violate Proposition 65.

## SEVENTH COUNT

### (Fraud)

86.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein and, to the extent necessary, plead this cause of action in the alternative.

87.     Plaintiff bring this claim individually and on behalf of members of the Class and against Defendants.

88.     As discussed above, Defendants failed to disclose to class members that use of Vega Products would expose Plaintiff and other members of the Class to heightened levels of lead and cadmium.  Defendant also misrepresented that the Vega Products were healthy.

89.     The false and misleading representations and omissions were made with knowledge of their falsehood.

90.     The false and misleading representations and omissions were made by Defendants, upon which Plaintiff and members of the Class and California Subclass reasonably and justifiably

4e84308662

relied, and were intended to induce and actually induced Plaintiff and Class members to purchase the Vega Products.

91.     The fraudulent actions of defendant caused damage to Plaintiff and members of the Class, who are entitled to damages and other legal and equitable relief as a result.

### EIGHTH COUNT

### (Unjust Enrichment)

92.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein and, to the extent necessary, plead this cause of action in the alternative.

93.     Plaintiff bring this claim individually and on behalf of members of the Class and against Defendants.

94.     Plaintiff and Class members conferred benefits on Defendants by purchasing Vega Products.

95.     Defendants has knowledge of such benefits.

96.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of Vega Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants failed to disclose that the Vega Products contain heightened levels of lead and cadmium, in violation of Proposition 65.

97.     Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the proposed classes the following relief against Defendants:

    a.   That the Court certify the Class under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff as Class Representative and his attorneys as Class Counsel to represent the members of the Class;

b.   That the Court declare that Defendants' conduct violates the statutes referenced herein;

c.   That the Court preliminarily and permanently enjoin Defendants' from conducting business through the unlawful, unfair, or fraudulent business acts or practices, untrue, and misleading labeling and marketing and other violations of law described in this Complaint;

d.   That the Court order Defendants to conduct a corrective advertising and information campaign advising consumers that the Vega Products contain lead and cadmium in excess of California's Proposition 65;

e.   That the Court order Defendants to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

f.   That the Court order Defendants to notify each and every individual and/or business who purchased the Vega Products of the pendency of the claims in this action in order to give such individuals and businesses an opportunity to obtain restitution from Defendants;

g.   That the Court order Defendants to pay restitution to restore to all affected persons from all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading labeling, advertising, and marketing, plus pre- and post-judgment interest thereon;

h.   That the Court order Defendants to disgorge all monies wrongfully obtained and all revenues and profits derived by Defendants as a result of its acts or practices as alleged in this Complaint;

i.   That the Court award damages to Plaintiff and the Class;

j.   That the Court grant Plaintiff's reasonable attorneys' fees and costs of suit pursuant to California Code of Civil Procedure §1021.5, California Civil Code §1780(d), the common fund doctrine, and/or any other appropriate legal theory; and

1        k.   That the Court grant such other and further relief as may be just and proper.

2        l.   Such other relief as the Court deems just and proper.

3

### DEMAND FOR JURY TRIAL

4        Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any

5  and all issues in this action so triable of right.

6

7  Dated:  August 7, 2018           Respectfully submitted,

8                           **BURSOR & FISHER, P.A.**

9                           By:    */s/ L. Timothy Fisher*

10                               L. Timothy Fisher

11                         L. Timothy Fisher (State Bar No. 191626)

12                         Joel D. Smith (State Bar No. 244902)
Thomas A. Reyda (State Bar No. 312632)

13                         1990 North California Blvd., Suite 940
Walnut Creek, CA  94596

14                         Telephone: (925) 300-4455
Email:  ltfisher@bursor.com

15                                jsmith@bursor.com
treyda@bursor.com

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Andrew Bland in this action.  Plaintiff Andrew Bland resides in Berkeley, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 7th day of August, 2018.

*/s/ L. Timothy Fisher*
L. Timothy Fisher