**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Thomas A. Reyda (State Bar No. 312632)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
            jsmith@bursor.com
            treyda@bursor.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW BLAND, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>     v.<br><br>SEQUEL NATURAL LTD. D/B/A VEGA and WHITEWAVE FOODS CO.,<br><br>                                    Defendant. | Case No. 3:18-cv-04767<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**<br><br>Date:  December 20, 2018<br>Time:   1:30 p.m.<br>Courtroom: 3<br>Judge:  Hon. Richard Seeborg |

# TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT ........................................................................................................................2

    A. Defendants' Arguments Concerning Proposition 65 Lack Merit...............................2

        1. Defendants' Own Authority *Sciortino* Confirms Dismissal Is Improper ........................................................................................................2

        2. Defendants' Other Arguments and Authorities Do Not Support Dismissal................................................................................................5

    B. Defendants' Arguments Regarding Injunctive Relief Are Contrary to the Law ..........................................................................................................................8

        1. Defendants' Arguments Are Contrary to *Davidson* .......................................8

        2. Under *Kohl's*, Mr. Bland's Purchase of the Product Is Sufficient to Confer Standing.......................................................................12

        3. Defendants' Argument Regarding the "Public Interest" Lacks Merit .................................................................................................................12

        4. Mr. Bland Sufficiently Alleges Reliance........................................................13

    C. Mr. Bland Sufficiently Alleges Claims Against WhiteWave Foods........................14

III. CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Allen v. Wright*,
  468 U.S. 737 (1984) ............................................................................................................. 9

*Alvarez v. Chevron Corp.*,
  656 F.3d 925 (9th Cir. 2011) ............................................................................................ 6, 7

*Asencio v. Miller Brewing Co.*,
  283 F. App'x 559 (9th Cir. 2008) ........................................................................................ 6

*Avendano-Ruiz v. City of Sebastopol*,
  2016 WL 3017534 (N.D. Cal. May 26, 2016).......................................................... 7, 13, 14

*Blanks v. Seyfarth Shaw, LLP*,
  171 Cal. App. 4th 336 (2009) .............................................................................................. 6

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ............................................................................................... 6, 7, 10

*Collins v. eMachines, Inc.*,
  202 Cal. App. 4th 249 (2011) ............................................................................................ 13

*Cortina v. Goya Foods, Inc.*,
  94 F. Supp. 3d 1174 (S.D. Cal. 2015) .............................................................................. 5, 7

*Daniel v. Ford Motor Co.*,
  806 F.3d 1217 (9th Cir. 2015) ............................................................................................. 4

*Davidson v. Kimberly-Clark Corp.*,
  76 F. Supp. 3d 964 (N.D. Cal. 2014)................................................................................. 10

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ...................................................................................... passim

*Donohue v. Apple, Inc.*,
  871 F. Supp. 2d 913 (N.D. Cal. 2012)............................................................................... 11

*Environmental World Watch, Inc. v. American Airlines*,
  2005 WL 1867728 (N.D. Cal. 2005) ................................................................................. 12

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) .............................................................................. 4

*Henderson v. Gruma Corp.*,
  2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ................................................................... 10

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9thCir. 2013) ............................................................................................ 11

*In re Arris Cable Modem Consumer Litig.*,
  2018 WL 3820619 (N.D. Cal. Aug. 10, 2018) .................................................................. 12

*In re Schwarzkopf*,
  626 F.3d 1032 (9th Cir. 2010) .................................................................................................. 13

*In re Vaccine Cases*,
  134 Cal. App. 4th 438 (2005) ..................................................................................................... 6

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................................ 8, 9

*Machlan v. Procter & Gamble Co.*,
  77 F. Supp. 3d 954 (N.D. Cal. 2015) ........................................................................................ 10

*Morgan v. Apple Inc.*,
  2018 WL 2234537 (N.D. Cal. May 16, 2018) ............................................................................ 8

*Nevada v. Watkins*,
  814 F.2d 1545 (9th Cir. 1990) .............................................................................................. 7, 14

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ..................................................................................... 8, 9, 11

*Roney v. Miller*,
  705 F. App'x 670 (9th Cir. 2017) ............................................................................................. 14

*Sciortino v. Pepsico, Inc.*,
  108 F. Supp. 3d 780 (N.D. Cal. 2015) ................................................................................ passim

*Steel Co. v. Citizens for Better Environment*,
  523 U.S. 83 (1998) ................................................................................................................ 9, 10

*Towe Antique Ford Foundation v. IRS*,
  999 F.2d 1387 (9th Cir. 1993) .................................................................................................. 13

*Toxic Injuries Corp. v. Safety-Kleen Corp.*,
  57 F. Supp. 2d 947 (C.D. Cal. 1999) ........................................................................................ 12

*U.S. v. Bestfoods*,
  524 U.S. 51 (1998) .................................................................................................................... 14

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
  454 U.S. 464 (1982) ................................................................................................................... 9

*Webb v. Carters, Inc.*,
  2010 WL 11507254 (C.D. Cal. Apr. 1, 2010) ........................................................................ 5, 7

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ....................................................................................................... 2

Cal. Civ. Code § 1750 ...................................................................................................................... 2

**REGULATIONS**

Cal. Code Regs. tit. 11, § 3000 ................................................................................................ 11, 12

## I. INTRODUCTION

This is a simple case. Defendants manufacture vegan protein drinks and pitch them as healthful to consume, without disclosing that they contain high levels of lead and cadmium. In many cases, the amounts are so high that a single serving will expose a consumer to levels exceeding the reproductive toxicity limit set by Proposition 65. Complaint, ¶¶ 15-19. Defendants have known about this for years. *See id.* at ¶¶ 5, 23.

Defendants' motion to dismiss boils down to three primary arguments. They first contend that Plaintiff Mr. Bland's claims must be dismissed because they are purportedly derivative of a Proposition 65 claim, and primarily rely on *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780 (N.D. Cal. 2015) for that position. But the *Sciortino* court denied a motion to dismiss claims based on allegations that were the model for Mr. Bland's allegations here. In fact, the *Sciortino* court rejected the same arguments Defendants make here even though the *Sciortino* plaintiff explicitly alleged that the challenged product had harmful chemicals that exceeded Proposition 65's safety threshold, and "refer[red] to Proposition 65 repeatedly in support of her claims." *Id.* at 794 (emphasis added).

Defendants next contend that Mr. Bland is not entitled to injunctive relief, but rely on a lower court decision that was reversed by the Ninth Circuit in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), and another lower court decision the Ninth Circuit disapproved of in *Davidson*. Simply put, Defendants' injunctive relief arguments rely on cases that are no longer good law, and Defendants are asking this Court to make the same reversible error as the lower court in *Davidson*.

Finally, Defendants ask the Court to dismiss the claims against Whitewave Foods based on the general rule that a parent is not liable for the acts of its subsidiary. But that argument is beside the point because the complaint alleges alter ego and direct liability against Whitewave Foods, and Defendants do not argue that the alter ego and direct liability allegations are deficient. They cannot raise that argument for the first time on reply. In short, the Court should deny the motion.

//

//

## II. ARGUMENT

### A. Defendants' Arguments Concerning Proposition 65 Lack Merit

#### 1. Defendants' Own Authority *Sciortino* Confirms Dismissal Is Improper

Defendants contend this case is a Proposition 65 case in disguise because some of the allegations in the complaint refer to that statute.  However, the principal case Defendants cite, *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780 (N.D. Cal. 2015), <u>denied</u> a motion to dismiss claims similar to the claims Mr. Bland asserts here.

In *Sciortino*, nine putative class actions were filed against PepsiCo ("Pepsi") alleging that the company failed to disclose that its sodas contain a Proposition 65-listed chemical called 4–Methylimidazole ("4-MeI").  *Id.* at 785-86.  Two of the plaintiffs, Ibusuki and Hall, initially alleged claims under the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL"), for fraudulent concealment concerning the challenged ingredient, and then later amended to add a Proposition 65 claim after the required notice period was complete.  *Id.* at 787, 790–91.  Like Defendants here, Pepsi sought dismissal of the CLRA and UCL claims, claiming that they were derivative of the Proposition 65 claim, and that plaintiffs artfully pled the claims to circumvent Proposition 65's notice requirements.  *Id.* at 791.  The *Sciortino* court dismissed Ibusuki's claims, but not Hall's claims.  *Id.* at 793–94.  As explained further below, the difference in the two outcomes is instructive because the allegations in Mr. Bland's complaint here were modeled in part on Hall's allegations in *Sciortino*, and drafted to avoid the defects in Ibusuki's claims.

Judge Chen began the analysis in *Sciortino* by framing the issue in terms of whether the claims were "entirely derivative of an unspoken Proposition 65 violation, or whether they assert claims independent of Proposition 65."  *Id.* at 793.  Ibusuki's initial complaint alleging claims under the CLRA and UCL "referred to no other alleged misstatements other than the failure to warn under proposition 65."  *Id.*  Unlike here, every allegation of an omission by Ibusuki referenced the "'health-warning label per California's Prop. 65.'"  *Id.* (quoting complaint).  As a result, "the gravamen of [Ibusuki's] initial complaint was a Proposition 65 claim."  *Id.*

The court then found that "[b]y contrast, the Hall Complaint does not plead around Proposition 65"—even though (like here) Hall's complaint explicitly alleged that the challenged ingredient in Pepsi's sodas exceeded Proposition 65's safety threshold, and "refer[red] to Proposition 65 repeatedly in support of [Hall's] claims." *Id.* at 794 (emphasis added). The court made two principle distinctions between the Ibusuki and Hall allegations, both of which are pertinent here.

First, unlike Ibusuki, "Hall expressly disclaimed any Proposition 65 violation in her initial complaint" when she alleged, "'[t]his Complaint does not allege a violation of Proposition 65.'" *Sciortino*, 108 F. Supp. 3d at 794 (quoting complaint). Instead, "Hall explained that 'Proposition 65 is relevant to the extent it provides guidance as to a reasonable consumer's purchasing decisions in California.'" *Id.* (quoting complaint). Mr. Bland alleges the same thing here. Complaint, ¶ 14 ("This Complaint does not allege a violation of Proposition 65. Proposition 65 is relevant, however, to the extent it provides information concerning the material misrepresentations and omissions in violation of California's Consumer Protection laws, and guidance as to a reasonable consumer's purchasing decisions. . . .").

Second, in *Sciortino*, Hall alleged misrepresentations that were "not literally based upon a violation of Proposition 65." *Id.* Relatedly, "Hall's initial complaint and the CAC both appear[ed] to allege that Pepsi should have disclosed the presence of 4-MeI in the Pepsi Beverages irrespective of Proposition 65, including *e.g.,* in its advertising and public statements." *Id.* Again, Mr. Bland's complaint here includes similar allegations:

- Despite containing harmful levels of lead and cadmium, Defendants "label and market the Vega Products with health based representations," but "provide no warning whatsoever about . . . [the] presence, or the health risks, birth defects and reproductive harm associated with [the products'] consumption." Complaint ¶¶ 2, 14, 20 (emphasis added).

- "[I]nstead of disclosing the presence of the heightened levels of lead and cadmium that are known to cause reproductive harm, Defendants direct consumers to consult with their 'healthcare practitioner' because each person's 'nutritional needs are unique when you are pregnant or breastfeeding[.]'" *Id.* at ¶ 22.

- The labeling on Defendants' products "all [falsely] convey a uniform representation the Vega Products are healthy and provide consumers with what their bodies need." *Id.* at ¶ 20.

- "The amount of these toxic heavy metals present in a single serving of the Vega Products is sufficient to expose consumers to a substantial risk of birth defects and other reproductive harm." *Id.* at ¶ 3.  Reasonable consumers would want to be told about those risks because they "are concerned about potential reproductive toxicity in products." *Id.* at ¶ 22.

- "No reasonable consumer would know, or have reason to know, that the Vega Products contain heightened levels of heavy metals. … Defendants actively concealed this material fact from consumers, including Plaintiff and members of the Class." *Id.* at ¶ 23.

Although the allegations here also reference Proposition 65, they are pled with the elements of a fraudulent omission claim in mind.  A fraudulent omission claim applies when, among other circumstances, "the defendant had exclusive knowledge of material facts not known to the plaintiff; [or] when the defendant actively conceals a material fact from the plaintiff; [or] when the defendant makes partial representations but also suppresses some material fact." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007).  "Alleged defects that create unreasonable safety risks are considered material" for purposes of an omission claim. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015).  In his complaint, Mr. Bland alleges each of the aforementioned circumstances, and alleges a safety risk.  Complaint, ¶¶ 5, 23 (alleging Defendants' exclusive knowledge and/or active concealment); *id.* at ¶¶ 2, 20-22 (alleging partial representations concerning health matters without disclosing material facts); *id.* at ¶¶ 3, 12-13, 15-19 (alleging safety risks).  Hence, like the plaintiff Hall in *Sciortino*, if the complaint here were stripped of any references to Proposition 65, Mr. Bland would still have viable claims because the duty to disclose arises independently of Proposition 65.  Defendants do not contend otherwise.

Defendants only acknowledged their failure to disclose the outcome of Hall's claims in *Sciortino* after Mr. Bland pointed out that fact in his CMC Statement.  Defendants then hastily attempted to distinguish Hall's claims by arguing that, unlike here, Pepsi "allegedly made an affirmative representation to the public that it had removed [4-MeI] from its product in California when, in fact, it had not." CMC Stmt, at 2:20-22 (Dkt. No.19).  Although Defendants still do not get the facts of *Sciortino* quite right,[1] the bottom line is that they are advancing a distinction

---

[1] *See Sciortino*, 108 F. Supp. 3d at 794 ("Hall alleged that Pepsi 'feigned action' in response to the changing regulatory environment in California, misleading consumers into believing that the amounts of 4-MeI in the Pepsi Beverages <u>were lower than they were</u>.") (Emphasis added).

without a difference. The crux of the decision was that Hall had "disclaimed any Proposition 65 violation," and that even though the "the alleged misstatement [was] related to Proposition 65," the duty to disclose the presence of 4-Mel arose "irrespective of Proposition 65." *Sciortino*, 108 F. Supp. 3d at 794 (emphasis added).

Moreover, the *Sciortino* court was not the first to apply this reasoning in cases where the plaintiffs alleged false advertising claims referencing Proposition 65. In *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1183 n. 3 (C.D. Cal. 2015), as here and in *Sciortino*, the plaintiffs mentioned Proposition 65 safe harbor levels but expressly disclaimed that their UCL, CLRA and FAL claims were predicated on violations of Proposition 65. The court rejected nearly the same argument Defendants make here when it denied a motion to dismiss because those claims were based on duties that arose independently of Proposition 65. Similarly, in *Webb v. Carters, Inc.*, 2010 WL 11507254, at *7-10 (C.D. Cal. Apr. 1, 2010), allegations that the defendant had a duty to disclose information under Proposition 65 did not bar false advertising claims because the duty to disclose also independently arose under the common law and another statute. The same reasoning applies here.

### 2. Defendants' Other Arguments and Authorities Do Not Support Dismissal

Defendants briefly argue that "the UCL, CLRA and other claims cannot be invoked to require more extensive or different warnings than those dictated by Proposition 65 . . . ." Opening Brf., 6:15-19. In a similar vein, Defendants contend that Mr. Bland cannot evade the "safe harbor" provided by a Proposition 65 warning label, citing the proposition that where "'the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination.'" *Id.* at 6:21-24. Those arguments fail to support dismissal for three reasons.

<u>First</u>, the arguments make no sense because the challenged products have no Proposition 65 warning labels on them. *See* Complaint ¶ 21. Hence, even if the presence of Proposition 65 labeling could defeat Mr. Bland's claims, there is no such labeling here, and thus no "safe harbor" for Defendants to invoke.

Second, if Defendants mean to say that Proposition 65 is the only available claim when a company fails to disclose that its products contain high levels of a Proposition 65-listed chemical, then that position is plainly wrong. Defendants cite no authority, and Mr. Bland is aware of none, suggesting that Proposition 65 preempts or otherwise bars false advertising claims where the challenged products have no Proposition 65 warning label on them. *Sciortino*, *Cortina* and *Webb* demonstrate that plaintiffs can bring false advertising cases either in tandem with, or in lieu of, Proposition 65 claims. *See supra* Section II(A)(1) above.

Third, none of the other cases Defendants cite support dismissal. Apart from *Sciortino*, Defendants cite *In re Vaccine Cases*, 134 Cal. App. 4th 438, 458 (2005), but the *Sciortino* case cited or referred to that decision twelve times before concluding that Hall's allegations were not derivative of a Proposition 65 case.[2] *See Sciortino*, 108 F. Supp. 3d at 790-94. The plaintiffs in *In re Vaccine* alleged a claim under Proposition 65 and also a UCL "unlawful" claim using Proposition 65 as the predicate violation. When the lower court dismissed the Proposition 65 case for failure to satisfy the notice requirements, there was "no statutory violation remaining to provide the 'unlawful' business act or practice for the UCL claim and the court dismissed that claim as well." *Asencio v. Miller Brewing Co.*, 283 F. App'x 559, 561–62 (9th Cir. 2008) (explaining *In re Vaccine*). Here, in contrast, Mr. Bland alleges a claim under the "unlawful" prong of the UCL, but he did not allege that a violation of Proposition 65 (Health & Saf. Code, § 25249.5 et seq.) is a predicate violation for the UCL claim. *See* Complaint, ¶ 44 (listing the predicate violations for the UCL "unlawful" claim). The exclusion of Proposition 65 from Paragraph 44 of the Complaint was intentional because Mr. Bland's UCL claim is not intended to be "entirely derivative" of Proposition 65. *Sciortino*, 108 F. Supp. 3d at 793. The *In re Vaccine Cases* decision is therefore inapposite.

Defendants also cite *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) ("*Cel-Tech*"), and *Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011), but neither

---

[2] Defendants also cite *Blanks v. Seyfarth Shaw, LLP*, 171 Cal. App. 4th 336 (2009), but that case is inapposite because it did not involve any allegations related to Proposition 65.

case involved Proposition 65, and to the extent they are instructive at all, they contradict Defendants' position.  In *Cel-Tech*, which involved anticompetitive sales of cell phones, the California Supreme Court explained:

> A plaintiff may … not plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition … The rule does not, however, prohibit an action under the unfair competition law merely because some other statute on the subject does not, itself, provide for the action or prohibit the challenged conduct.  <u>To forestall an action under the unfair competition law, another provision must actually "bar" the action or clearly permit the conduct</u>.

20 Cal. 4th at 182 (emphasis added).  Applying this reasoning in *Alvarez*, the Ninth Circuit held that the plaintiffs could not sue gas station companies for using gasoline dispensers that California law "unequivocally" permitted defendants to use, or for making disclosures that were required by federal octane labeling regulations promulgated by the FTC.  *See Alvarez*, 656 F.3d at 933-35.  This case is different from *Cel-Tech* and *Alvarez* because Proposition 65 does not "clearly permit" Defendants to hide the fact that their products contain high levels of lead and cadmium.  Nor does Proposition 65 "bar" false advertising claims based on a failure to disclose the presence of harmful chemicals.  *See Sciortino*, 108 F. Supp. 3d at 794; *Cortina*, 94 F. Supp. 3d at 1183; *Webb*, 2010 WL 11507254, at *7–10.

Finally, after Defendants filed their motion to dismiss, they violated Local Rule 3-13 by filing supplemental papers disclosing for the first time that they were sued under Proposition 65 in two separate lawsuits filed on January 26, 2017 and June 19, 2018.[3]  Dkt. Nos. 20-21.  But those actions simply show that other people sued Defendants under Proposition 65 for the presence of lead and cadmium in their products.  It does not logically follow that this case is a defacto Proposition 65 case too, because *Sciortino* and other cases cited in Section II(A) above show that the duty to disclose arises independently under other laws, and that a failure to disclose may

---

[3] Even if the cases are substantially similar to this one (they are not), Defendants violated Local Rule 3-13(a) because they were required to "promptly" file the notice of pendency when they first learned of another matter falling within the ambit of the rule.  Both actions were filed long ago.  Defendant also violated Local Rule 3-13(b) by using the Notice as a pretext for supplementing their arguments for dismissal.

sometimes support a Proposition 65 claim, <u>or</u> a false advertising claim, <u>or</u> both.  Defendants' belated reliance on these cases is curious, because all they show is that other people independently tested Defendants' products and confirmed the presence of high levels lead and cadmium.

### B. Defendants' Arguments Regarding Injunctive Relief Are Contrary to the Law

At the outset, Defendants challenge Mr. Bland's standing for purposes of injunctive relief only (Opening Brf., 7), and therefore waived any argument on reply that their standing arguments extend to Mr. Bland's claims for damages.  *See Avendano-Ruiz v. City of Sebastopol*, 2016 WL 3017534, *9 (N.D. Cal. May 26, 2016) (Seeborg, J.) ("It is improper for a moving party to introduce . . . different legal arguments in the reply brief than those presented in the moving papers") (internal quotation omitted); *accord Nevada v. Watkins*, 814 F.2d 1545, 1560 (9th Cir. 1990) (""[Parties] cannot raise a new issue for the first time in their reply briefs.").  Regardless, Defendants' arguments are contrary to the law and should be rejected.

#### 1. Defendants' Arguments Are Contrary to *Davidson*

Defendants claim that if Mr. Bland "would never purchase a product that allegedly exposed him to lead and cadmium, he lacks standing to seek an injunction to have the product warning changes [sic] to disclose such exposures."  Opening Brf., 7:23-24.  This is a strawman argument and a misstatement of Ninth Circuit law.  To establish Article III standing, a plaintiff must have suffered (1) an injury in fact, (2) caused by the conduct complained of, and (3) the injury must be redressed by a favorable decision.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  "A previously deceived consumer may have standing to seek an injunction against false advertising or labeling…because the consumer may suffer an actual and imminent, not conjectural or hypothetical, threat of future harm."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-71 (9th Cir. 2018) ("*Davidson*") (quotation omitted).  Accordingly, much like this Court has held in other cases, Defendants' argument that Mr. Bland is "not threatened by future harm because [he is] now aware of the contents of [the Vega Products], and can no longer be deceived . . . may be dispatched with relative ease."  *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) (Seeborg, J.); *see also Morgan v. Apple Inc.*, 2018 WL 2234537, at *10 (N.D. Cal. May 16, 2018)

(noting "the Ninth Circuit addressed this very issue in [*Davidson*]" and concluding that "plaintiffs' allegations are sufficient to establish imminent harm based on their inability to rely on Powerbeats' advertising or labeling in the future.") (Seeborg, J.).

"First, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotation omitted). An injury in fact exists where a plaintiff desires to purchase a product but is unable to "rely on the validity of the information advertised[.]" *Davidson,* 889 F.3d. at 971. In *Davidson*, the Ninth Circuit held that plaintiff suffered an injury in fact because of "her inability to rely on the validity of the information advertised on Kimberly-Clark's [flushable] wipes despite her desire to purchase truly flushable wipes." *Id.* at 971. Likewise here, "Plaintiff remains interested in purchasing a healthy safe protein powder and shake product, and would consider the Vega Products in the future if Defendants remove the heightened levels of lead and cadmium." Complaint, ¶ 6. Similar to the plaintiff in *Davidson*, Mr. Bland cannot currently rely on the Vega Product packaging, despite his desire to purchase the Vega Products free of heightened heavy metal levels. That is an injury in fact.

"Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly [] traceable to the challenged action of the defendant, and not [] the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quotation omitted). Defendants do not argue that Mr. Bland fails to satisfy the causation element of Article III standing, nor could they reasonably do so. Defendants' conduct (in failing to disclose whether or not the Vega Products contain high levels of heavy metals) is the cause of Mr. Bland's continued inability to rely on the Vega Product packaging.

"Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quotation omitted). As this Court has held, courts can redress the injury of false advertising by enjoining a defendant from engaging in the deceptive behavior. *See Ries*, 287 F.R.D. at 533 ("Plaintiffs request to be relieved from false advertising by defendants in the future … [because] [s]hould plaintiffs encounter the denomination

"All Natural" on an AriZona beverage at the grocery store today, they could not rely on that representation with any confidence."); *see also Davidson*, 889 F.3d at 972 (finding redressability satisfied where "[t]he injunction Davidson seeks would prohibit Kimberly–Clark from using the term "flushable" on their wipes until the product is truly flushable."). The injunction Mr. Bland seeks would require Defendants to disclose the heightened levels of lead and cadmium and their respective health risks, until the Vega Products no longer contain such high heavy metal levels. Mr. Bland has therefore identified a specific remedy that will benefit himself and all other putative class members (purchasers of the Vega Products).

As to this third requirement, Defendants argue that Mr. Bland cannot obtain an injunction because he seeks a "'vindication of the rule of law' that benefits the 'undifferentiated public interest.'" *See* Opening Brf., 12:8-10 (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 106-07 (1998)). In a similar vein, Defendants contend Mr. Bland's request for injunctive relief improperly raises an "abstract question[] of wide public significance." *See* Opening Brf., 12:20-13:7 (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982) and *Allen v. Wright*, 468 U.S. 737, 755 (1984)). That is wrong. Mr. Bland's request for injunctive relief is based on a personal grievance with Defendants for their violations of legal rights and interests of Mr. Bland and the putative class. *Steel*, *Valley Forge* and *Allen* are all distinguishable for the simple reason that none involved a consumer class action alleging false advertising claims, where injunctive relief is one of the typical forms of relief available. *See*, *e.g.*, *Steel*, 523 U.S. 106-107; *cf. Cel-Tech*, 20 Cal. 4th at 179 (injunctive relief and restitution are the available remedies under the UCL).

Finally, the decisions Defendants rely on for the proposition that "a plaintiff in a consumer products case does not have standing to pursue injunctive relief" were either overturned or disfavored by the Ninth Circuit in *Davidson*. *Compare Davidson*, 889 F.3d at 969 *with* Opening Brf., 9:7-10:2 (citing *Davidson v. Kimberly-Clark Corp.*, 76 F. Supp. 3d 964, 969 (N.D. Cal. 2014)

and *Machlan v. Procter & Gamble Co.*, 77 F. Supp. 3d 954 (N.D. Cal. 2015) ("*Machlan*")).[4] In rejecting the line of cases upon which Defendants now rely, the Ninth Circuit observed "that [its] holding alleviates the anomalies the opposite conclusion would create." *Davidson*, 889 F.3d at 970. Namely, Defendants' proposed application of Article III would "[a]llow[] a defendant to undermine California's consumer protection statutes and defeat injunctive relief simply by removing a case from state court[.] [This] is an unnecessary affront to federal and state comity [and ] ... an unwarranted federal intrusion into California's interests and laws." *Id.* (internal quotation omitted); *see also Henderson v. Gruma Corp.*, 2011 WL 1362188, at *8 (C.D. Cal. Apr. 11, 2011) ("[T]o prevent [plaintiffs] from bringing suit on behalf of a class in federal court would surely thwart the objective of California's consumer protection laws."). In fact, in reaching its decision, the Ninth Circuit cited and followed the reasoning of this Court in *Ries.* (*Davidson*, 889 F.3d at 968-72 (explaining and following *Ries*)).

Defendants acknowledge the Ninth Circuit's decision in *Davidson* for the first time in their Case Management Statement. *See* Dkt. No. 19, at 3:1-5. Defendants contended, without explanation, that under the Ninth Circuit's decision, Mr. Bland's stated interest in buying "the Vega Products [] if Defendants remove the heightened levels of lead and cadmium[]" is insufficient to support a request for injunctive relief. Complaint, ¶ 6. To the contrary, *Davidson* found similar allegations to be sufficient, where the "[plaintiff] alleged that she 'continues to desire to purchase wipes that are suitable for disposal in a household toilet'; 'would purchase truly flushable wipes manufactured by [Kimberly–Clark] if it were possible'… but has 'no way of determining whether the representation 'flushable' is in fact true." *Davidson*, 889 F.3d at 970–71. As in *Davidso*n, the Complaint here is "devoid of any grounds to discount [Mr. Bland's] stated intent to purchase [the Vega Products] in the future." *Id.* at 971 (quoting *Ries*, 287 F.R.D. at 533). Accordingly, any belated attempt to distinguish *Davidson* on reply is without merit.

//

---

[4] Defendants mistakenly characterize *Machlan* as a decision of "this Court." Opening Brf., 9:21-25. Judge Donato decided *Machlan*. *Machlan*, 77 F. Supp. 3d at 954.

### 2. Under *Kohl's*, Mr. Bland's Purchase of the Product Also Is Sufficient to Confer Standing

Defendants also argue that that Mr. Bland lacks standing to seek injunctive relief because he purportedly "[h]as [n]ot [s]uffered [a] cognizable [i]njury [u]nder Article III." Opening Brf., 10:3.  That is wrong.  "[W]hen, as here, 'Plaintiff[] contends that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so' they have suffered an Article III injury in fact." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir.2013).  Consistent with the rule in *Hinojos*, Mr. Bland also suffered injury because he alleges he was induced to purchase the Vega Products by Defendants' failure to disclose the heightened levels of lead and cadmium.  Complaint, ¶¶ 5, 6, 37, 46, 56, 64, 78, and 90.  A consumer faced with the choice of whether to purchase the Vega Products without heightened levels of lead and cadmium, or with heightened levels of lead and cadmium "would unquestionably choose the former."  *See Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 920 (N.D. Cal. 2012).  It is therefore reasonable to infer that a consumer who unknowingly bought the Vega Products with heightened levels of lead and cadmium "acquire[d] in a transaction less than he or she would have absent the defect." *Id*.

### 3. Defendants' Argument Regarding the "Public Interest" Lacks Merit

Defendants argue that Mr. Bland lacks Article III standing to sue "for violations of Proposition 65" in the public interest, or to act "in the capacity [of] a private attorney general." Opening Brf., 10:12-11:22.  As discussed *supra* in Section II(A), Mr. Bland does not allege a claim under Proposition 65 via the public interest provision of Cal. Code Regs. tit. 11, § 3000 or otherwise.  *Compare supra* Section II(A) and Complaint, ¶¶ 33-97, *with* Opening Brf., 10:12-13. The Court should reject Defendants' false analogies to cases where a plaintiff never purchased a product, but instead brought an action pursuant to the public interest provision of Cal. Code Regs. tit. 11, § 3000.  *See, e.g., Toxic Injuries Corp. v. Safety-Kleen Corp.*, 57 F. Supp. 2d 947 (C.D. Cal. 1999) (California public benefit corporation, acting as private attorney general on behalf of general public brought state court action against washer solvent supplier for misrepresentation of toxicity

1  of solvent); *Environmental World Watch, Inc. v. American Airlines*, 2005 WL 1867728 at *1 (N.D.
2  Cal. 2005) (suit was brought by plaintiff Environmental World Watch "in the public interest [] in
3  the absence of any personal or individualized losses.").

### 4.  Mr. Bland Sufficiently Alleges Reliance

Although not listed in Defendants' Statement of Issues (*see* Opening Brf., 1:2-7), Defendants briefly argue that Mr. Bland's reliance allegations are deficient with regards to his request for injunctive relief.  Defendants argue that "[i]f [Plaintiff] would consider buying the [Vega Products] even if it gives rise to [heavy metal] exposures, then his allegations that he relied upon the lead and cadmium omissions … are false, and he has eviscerated any claim of a reliance-based injury."  Opening Brf., 7:25-28.  To the contrary, Mr. Bland's reliance allegations are entirely sufficient.

First, Defendants' argument is factually inaccurate.  Mr. Bland never alleged a willingness to purchase the Vega Products with heightened levels of lead and cadmium.  *See* Complaint, ¶ 6, ("Had Defendants disclosed, on the label or otherwise, that the Vega Product contained high levels of lead and cadmium, Mr. Bland would have been aware of that, and would not have purchased the Vega Essentials Protein Powder.").

Second, even if Mr. Bland would consider purchasing the Vega Products with heightened levels of lead and cadmium this would not vitiate Mr. Bland's claim of reliance.  For "claims that rely on a theory of fraudulent omission . . .  reliance can be inferred when an omission is material, and whether an omission is material is determined using a 'reasonable consumer' standard." *In re Arris Cable Modem Consumer Litig.*, 2018 WL 3820619, at *22 (N.D. Cal. Aug. 10, 2018).  This standard does not require a plaintiff to disavow any interest in purchasing a product at any price – it only requires that the information would influence how a plaintiff would act in a transaction. *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256, 134 (2011) ("a fact is deemed 'material,' . . . if a 'reasonable [consumer]' would deem it important in determining how to act in the transaction at issue.").  Accordingly, reliance would still be satisfied if Mr. Bland was willing to purchase the Vega Products with heightened levels of lead and cadmium at a lower price than he originally paid.

<u>Third</u>, Defendants' argument appears to conflate reliance with standing to seek injunctive relief, and to the best that Mr. Bland can glean, the argument does not appear to extend to any of the claims for monetary relief.  *See id.* at 2 (arguing Mr. Bland's "allegations cannot satisfy reliance, a fatal defect warranting dismissal of Plaintiff's reliance based claims seeking *injunctive relief*.") (emphasis added) and 7 (arguing reliance allegations are deficient under a heading related to injunctive relief only).  Accordingly, Defendants waived any argument on reply that its reliance arguments extend to Mr. Bland's claims for monetary relief.  *See Avendano-Ruiz*, 2016 WL 3017534, *9.

### C. Mr. Bland Sufficiently Alleges Claims Against WhiteWave Foods

Defendants ask the Court to dismiss claims against Defendant WhiteWave Foods because "a parent company is not generally liable for the acts of its subsidiaries merely because of the corporate relationship."  MTD, at 13:9-24.  That is true enough as far as it goes, but the argument nonetheless fails under two legal principles.

<u>First</u>, Defendants overlook that a parent company may be liable for the acts of its subsidiary under an "alter ego" theory.  "California recognizes alter ego liability where two conditions are met: First, where there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; and, second, where adherence to the fiction of the separate existence of the corporation would ... sanction a fraud or promote injustice." *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (internal quotations omitted).[5]

<u>Second</u>, regardless of whether one company is the alter ego of another, a parent may be liable of it directly participated in the wrongdoing.  *U.S. v. Bestfoods*, 524 U.S. 51, 64-65 (1998) ("derivative liability cases are to be distinguished from those in which the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management.") (internal quotation omitted).

---

[5] Courts "apply the law of the forum state in determining whether a corporation is an 'alter ego'" of another company. *Towe Antique Ford Foundation v. IRS*, 999 F.2d 1387, 1391 (9th Cir. 1993).

These principles govern here.  The complaint contains allegations supporting both of the aforementioned conditions for alter ego liability.  *See* Complaint, ¶ 8 ("Defendant WhiteWave Food Co. through its wholly owned subsidiary Sequel Natural LTD d/b/a Vega manufacture, markets, and sells the Vega Products.  There exists a unity of interest and ownership such that the separate personalities of the Defendant Sequel Natural LTD. and Defendant WhiteWave Food Co. no longer exist, and the treatment of the acts alleged herein as those of Sequel Natural LTD alone would produce an inequitable result.").  The complaint also alleges that both defendants jointly engaged in the misconduct at issue here.  *See e.g.*, *id*. ¶¶ 5, 20, 22.

Defendants do not argue in their motion to dismiss that the allegations are insufficient under Rule 8 to support alter ego liability or liability for WhiteWave's direct participation.[6]  Instead, they have simply taken the position, without explanation, that the general rule limiting liability for parent companies should apply here.  Under the Ninth Circuit's decision in *Watkin*s and this Court's decision in *Avendano*, Defendants cannot argue for first time on reply that the alter ego and direct liability allegations are deficient.  *See Watkins*, 814 F.2d at 1560 (""[Parties] cannot raise a new issue for the first time in their reply briefs."); *accord Avendano*, 2016 WL 3017534 at *9.

### III. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss in its entirety.  Alternatively, if the Court determines that the pleadings are deficient in any respect, Mr. Bland respectfully requests leave to amend to cure any such deficiencies.  *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (holding lower court erred in denying leave to amend after dismissing first amended complaint).

Dated:  November 14, 2018                     Respectfully submitted,

                                                             **BURSOR & FISHER, P.A.**

                                                             By:      */s/ Joel D. Smith*
                                                                          Joel D. Smith

---

[6] *See* Notice of Motion and Motion to dismiss; Opening Brf., 1 (Statement of Issues); *id.* at 2 (Summary of Argument); *id.* at 3-4 (Introduction); *id.* at 13:9-24 (Section IV addressing Whitewave).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Thomas A. Reyda (State Bar No. 312632)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
         jsmith@bursor.com
         treyda@bursor.com

*Counsel for Plaintiff*