UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDREW BLAND,

    Plaintiff,

v.

SEQUEL NATURAL LTD., et al.,

    Defendants.

Case No. 18-cv-04767-RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

## I. INTRODUCTION

This putative class action arises from the sale of protein powders and shakes allegedly containing lead and cadmium. Plaintiff Andrew Bland contends Sequel Naturals ULC[1] and its corporate parent WhiteWave Foods Company (collectively, "Defendants") marketed and sold Vega Protein Powders and Protein Shakes ("Vega Products") without warning consumers about the presence of these toxins, in violation of state law. Defendants now move to dismiss Bland's class action complaint. For the reasons set forth below, this motion is granted in part and denied in part. All claims against WhiteWave are dismissed with leave to amend, however Defendants' motion to dismiss is otherwise denied.

## II. BACKGROUND

According to the complaint, the defendant corporations manufacture and sell vegan protein

---

[1] Sequel Naturals ULC was erroneously sued under the name Sequel Natural Ltd. There appears to be no dispute, however, that the defendants who have appeared in this suit are the intended targets of this action.

drinks, and market these products as healthy without disclosing that they contain lead and cadmium. Bland purchased Defendants' products not realizing they contained these toxins and subsequently filed suit alleging (1) several violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, (2) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, (3) breach of an implied warranty, (4) failure to warn, (5) fraud, and (6) unjust enrichment.

Lead and cadmium are also the subject of the Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65). Cal. Health & Safety Code § 25249.6 *et seq.* Proposition 65 requires businesses operating in California to provide a "clear and reasonable" warning before exposing consumers to chemicals known to cause "cancer or reproductive toxicity." *Id.* The regulations implementing this law include a safe harbor provision which provides language "deemed to be clear and reasonable" for the purposes of Proposition 65. *See* 27 Cal. Code Regs. §§ 25600, 25607.2. Although Bland does not assert a claim under Proposition 65, he alleges the statute may affect California consumers' reasonable expectations regarding the marketing of products containing certain toxins.

Defendants seek dismissal of the complaint, arguing Bland lacks standing and that he failed to comply with Proposition 65's pre-suit notice requirements. In the alternative, Defendants seek dismissal of all claims against WhiteWave for failure to plead sufficient facts to support a claim.

### III. LEGAL STANDARD

**A. Standing**

To establish standing under Article III of the Constitution, a plaintiff must satisfy three requirements: injury-in-fact, causation, and redressability. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). Furthermore, Plaintiffs seeking injunctive relief must establish a threat of future injury that is "actual and imminent, not conjectural or hypothetical." *Id.* In the class action context, a named plaintiff seeking injunctive relief must show he or she is personally "subject to a likelihood of future injury." *Shank v. Presidio Brands, Inc.*, No. 17-CV-00232, 2018

WL 1948830, at *2 (N.D. Cal. Apr. 25, 2018); *see also Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

### B. Rule 12(b)(6)

Under the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either a "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Courts, however, need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## IV. DISCUSSION

### A. Standing

#### 1. <u>Injury-in-Fact</u>

Defendants argue Bland has not adequately pleaded either a future injury sufficient to establish standing to seek an injunction or a past injury sufficient to establish standing with respect to any other relief.

##### a. *Future Injury*

Bland argues that, absent an injunction, he will suffer a future injury because he will be unable to rely on Vega Products' packaging to determine whether these products contain heavy metals. Bland's complaint specifically alleges he "remains interested in purchasing a healthy safe

1 protein powder and shake product, and would consider the Vega Products in the future if
2 Defendants removed the heightened levels of lead and cadmium." Compl. ¶ 6. Defendants contend
3 this alleged injury is too conjectural to confer standing. Defendants specifically argue that once a
4 plaintiff discovers the deceptive nature of a product's marketing, this plaintiff no longer needs to
5 be protected from that marketing and therefore cannot seek injunctive relief. Defendants also
6 characterize Bland's assertion that he remains interested in Vega Products as inconsistent with his
7 assertion that he would not have purchased Vega Products, or would have purchased the products
8 on different terms, had he known they contained lead and cadmium.

9       The Ninth Circuit has explicitly rejected Defendants' interpretation of the standing
10 requirement. *Davidson*, 889 F.3d at 970 (rejecting the notion "that injunctive relief is never available
11 for a consumer who learns after purchasing a product that the label is false"). *Davidson* involved
12 false advertising claims related to the sale of purportedly flushable wipes. The plaintiff alleged she
13 "would purchase truly flushable wipes manufactured by" the defendant but had no way of knowing
14 whether the wipes had been improved to be flushable or whether the advertising was still false. *Id.*
15 at 970-71. The Ninth Circuit held this was sufficient to establish injury-in-fact because the plaintiff
16 was interested in purchasing "truly flushable wipes" but was "unable to rely on [the defendant's]
17 representations of its product in deciding whether or not she should purchase the product in the
18 future." *Id.* at 971-72.

19       Here, Bland "remains interested in purchasing a healthy safe protein powder and shake
20 product, and would consider the Vega Products in the future if Defendants removed the heightened
21 levels of lead and cadmium." Compl. ¶ 6. These assertions closely track the averments in *Davidson*.
22 Accordingly, Bland has adequately pleaded a threat of future injury for the purposes of seeking
23 injunctive relief.

24       *b. Past Injury*

25       Defendants argue Bland cannot establish past injury because exposure to a chemical that
26 *may* cause injury in the future is insufficient to establish Article III standing unless the threat of
27 harm is "credible" and "real." *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010).
28

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
CASE NO. 18-cv-04767-RS
4

Bland responds by arguing he suffered an injury because he paid more for the Vega Products than he otherwise would have had he known about the products' lead and cadmium content. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013). In short, Bland argues he obtained less in the transaction than he should have, given Defendants' representations. Bland's arguments are persuasive. The question is not whether Bland is likely to suffer ill health affects as a result of the Vega Products, but rather whether his purchase of the product based on misleading advertising harmed him. Bland's assertion that he would not have purchased the Vega Products under the terms applicable at the time had he been aware of the cadmium and lead content is sufficient to establish injury-in-fact at the motion to dismiss stage.

### 2. Redressability

Defendants' arguments regarding redressability largely reprise their injury-in-fact arguments and are unavailing for the reasons discussed above. Ultimately, Bland's inability to rely on Defendants' advertising is redressable through injunctive relief and any overpayment with respect to the Vega Products is redressable through monetary relief. Therefore, Bland has satisfied the redressability requirement for the purposes of this motion to dismiss.

### B. Proposition 65's Pre-Suit Notice Requirement

Prior to filing suit under Proposition 65, a private plaintiff must provide state authorities with 60 days' advance notice and must include a "certificate of merit" confirming the plaintiff has uncovered supporting facts and consulted with an expert on exposure. Cal. Health & Safety Code § 25249.7(d)(1). The purpose of the notice requirement is to prevent frivolous lawsuits and to enable the government to investigate and enforce compliance with Proposition 65. *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 788 (N.D. Cal. 2015). Accordingly, the pre-suit notice requirement is strictly enforced. *Id.* at 789.

Defendants argue that, although Bland does not explicitly assert a claim under Proposition 65, his claims are nonetheless subject to the pre-suit notice requirement. As Defendants note, "California courts have held that plaintiffs cannot plead around the notice requirement by characterizing their [Proposition 65] claim" as a UCL or CLRA claim. *Id*; *see also Blanks v.*

*Seyfarth Shaw*, 171 Cal. App. 4th 336, 366 (Cal. Ct. App. 2009); *In re Vaccine Cases*, 134 Cal. App. 4th 438, 457-58 (Cal. Ct. App. 2005) (dismissing a UCL claim based solely on an alleged Proposition 65 violation because plaintiffs failed to provide pre-suit notice). Accordingly, claims that are "entirely derivative of an unspoken Proposition 65 violation" are subject to Proposition 65's pre-suit notice requirements. *Sciortino*, 108 F. Supp. 3d at 792.

The district court in *Sciortino* dismissed several false advertising claims for lack of pre-suit notice, finding these claims entirely derivative of an alleged violation of Proposition 65. *Id.* Furthermore, the court held that failure to satisfy this pre-suit notice requirement could not be cured post-filing. *See id.* at 790 (citing *DiPirro v. Am. Isuzu Motors, Inc.*, 119 Cal. App. 4th 966, 975 (Cal. Ct. App. 2004), and *In re Vaccine Cases*, 134 Cal. App. 4th at 457). Defendants argue Bland's claims are merely Proposition 65 claims in disguise because the statute controls when manufactures must warn consumers about exposure to the chemicals at issue in this suit. In short, Defendants argue, absent Proposition 65 they would have no duty to disclose the presence of lead and cadmium in their products.

Furthermore, Defendants argue, Bland cannot evade the requirements of Proposition 65 by "seeking to impose more stringent requirements under the banner of generic consumer protection statutes like the UCL or CLRA." Mot. Dismiss 6. In particular, Defendants point to California Supreme Court cases holding that, where "the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination." *Cel-Tech Comm., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (Cal. 1999); *see also Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 (9th Cir. 2011). In other words, where legislation creates a "safe harbor," plaintiffs may not "use the general unfair competition law to assault that harbor." *Cel-Tech*, 20 Cal. 4th at 182. According to Defendants, this principle prevents Bland from sustaining any of his claims.

The district court in *Sciortino* dismissed some, but not all claims relating to Proposition 65 chemicals. The court differentiated between claims that were "entirely derivative of an unspoken Proposition 65 violation" and those that were independent of the statute. *Sciortino*, 108 F. Supp.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
CASE NO. 18-cv-04767-RS

3d at 792. Ultimately, the court refused to dismiss claims where the only relevance of Proposition 65 was to "provide[] guidance as to a reasonable consumer's purchasing decisions in California." *Id.* at 794. The court further noted that these claims were "not literally based upon a violation of Proposition 65" but rather relied upon an independent duty to disclose the presence of certain chemicals in its advertising and public statements irrespective of this statute. *Id.*

Bland argues his claims, like the surviving claims in *Sciortino*, do not depend upon Proposition 65 but rather allege independently misleading and fraudulent advertising. Bland specifically contends that Defendants' had an independent duty to disclose based on their partial representations regarding the healthfulness of Vega Products, their exclusive knowledge of the contents of the product, and the significant safety risk posed by the products. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007). If the complaint were stripped of any reference to Proposition 65, Bland's claims would survive because the duty to provide non-misleading information arises "irrespective of Proposition 65." *Sciortino*, 108 F. Supp. 3d at 794*; see also Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1185 (S.D. Cal. 2015); *Webb v. Carters, Inc.*, CV 08-7367, 2010 WL 11507254, at *9 (C.D. Cal. Apr. 1, 2010) (noting that a duty to disclose may arise based on a "contractual undertaking" or "other conduct by the defendant that makes it wrongful" to remain silent).

Defendants' primary authority, *Sciortino*, a district court decision not binding here, is ultimately more favorable to Bland than to Defendants. In the present case, like in *Sciortino*, the "alleged wrong is not a failure to warn under Proposition 65, but rather a separate misrepresentation to consumers regarding" the presence of potentially dangerous chemicals in Defendants' food products. 108 F. Supp. 3d at 794. The complaint alleges at various points that Defendants' failure to disclose the lead and cadmium content in their products was unlawful and misleading because they marketed these powders and shakes as healthy food products, and because the products posed a hidden health risk. For example, Bland notes that these products were labeled with representations such as "REAL plant-based FOOD," "Nutritional Shake" and

"Protein & Greens" and are targeted at health-conscious individuals. Compl. ¶ 20. Furthermore, Bland alleges lead consumption can cause an array of health complications *in addition to* cancer and reproductive harm. *Id.* ¶ 12.

Ultimately, these pleadings are sufficient to support an independent duty to disclose irrespective of Proposition 65.[2] In other words, even if all mention of Proposition 65 were removed from the complaint, Bland's claims would still survive because they arise from Defendants' partial representations and from the alleged concealment of health risks, including risks that fall outside the scope of Proposition 65. Finally, Defendants' argument that allowing this suit to proceed would run afoul of Proposition 65's safe harbor provision is unpersuasive. There is no indication that Defendants were in compliance with the safe harbor provision, therefore they cannot use it as a shield against litigation at the pleading stage.

**C. Adequacy of the Pleadings with Respect to Defendant WhiteWave**

If all other arguments fail, Defendants seek dismissal of all claims asserted against WhiteWave. A parent company is not generally liable for the actions of its subsidiaries, *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015), unless the parent functions as an "alter ego" to the subsidiary, *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010), or the parent company directly participated in the wrongful conduct, *United States v. Bestfoods*, 524 U.S. 51, 64-65 (1998).

To establish liability under the alter ego theory, a plaintiff must demonstrate a "unity of interest and ownership" such that treating the companies as separate entities would "sanction a fraud or promote injustice." *In re Schwarzkopf*, 626 F.3d at 1038. In analyzing this question, courts consider factors such as the commingling of funds, the maintenance of corporate records, and whether an identifiable owner control both entities. *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1060 (S.D. Cal. 2017). Defendants argue Bland's complaint merely

---

[2] This is not to say Bland must completely ignore the existence of Proposition 65 when making his case, however were Bland to fail to adduce independent evidence to support his claims he would risk re-opening this question.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
CASE NO. 18-cv-04767-RS

parrots back the requirement of the alter ego theory without providing any supporting facts. Defendants similarly contend Bland's allegations that WhiteWave directly participated in the alleged misrepresentations are conclusory and fail to provide sufficient facts to survive a motion to dismiss.

Bland points to allegations in the complaint that there "exists a unity of interest and ownership such that the separate personalities of the Defendant Sequel Natural[s] [] and Defendant WhiteWave [] no longer exist, and the treatment of the acts alleged herein as those of Sequel Natural LTD alone would produce an inequitable result." Compl. ¶ 8. These allegations, however, simply repeat the legal elements of the alter ego doctrine. Similarly, Bland's bare assertion that WhiteWave took part in the marketing and labeling of its subsidiary's products, without more, is insufficient to establish liability with respect to WhiteWave. Accordingly, Defendants' motion to dismiss is granted with respect to all claims asserted against WhiteWave. Bland is, however, granted leave to amend to cure these deficiencies.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted in part and denied in part. Should Bland choose to submit an amended complaint, he must do so no later than February 8, 2019.

**IT IS SO ORDERED**.

Dated: January 18, 2019

_____
RICHARD SEEBORG
United States District Judge