ANGELA C. AGRUSA (SBN 131337)
TAMANY BENTZ (SBN 258600)
GREGORY SPERLA (SBN 278062)
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Tel:   310.595.3000
Fax:   310.595.3300
Email:   angela.agrusa@dlapiper.com
         greg.sperla@dlapiper.com

Attorneys for Defendant
Sequel Natural, ULC

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Thomas A. Reyda (State Bar No. 312632)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
   jsmith@bursor.com
   treyda@bursor.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW BLAND, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SEQUEL NATURAL, ULC, D/B/A VEGA,<br><br>Defendant. | Case No. 3:18-cv-04767-RS (RMI)<br><br>**JOINT LETTER BRIEF REGARDING DISPUTES OUTSTANDING WITH PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO ITS FIRST SET OF WRITTEN DISCOVERY**<br><br>**Date:   March 28, 2019**<br>**Judge:  Hon. Robert M. Illman** |

Pursuant to Magistrate Judge Illman's March 22, 2019 Order following the discovery hearing on Plaintiff's motion to compel (Dkt. No. 47), the parties further met and conferred and now file this Joint Letter Brief regarding the discovery issues that remain in dispute. The parties have reached agreement on issues not addressed in this Joint Letter Brief.

## I.   DISPUTE REGARDING DOCUMENTS RELATING TO THE *ERC V. SEQUEL* CONSENT JUDGMENT (RFP NO. 8)

### A.   Text of Request

**REQUEST FOR PRODUCTION NO. 8:**  All non-privileged communications concerning or referencing *Environmental Research Center v. Sequel Naturals, Inc.*, L.A. County Superior Court Case No. BC506027.

### B.   Sequel's Position

Sequel maintains the position it articulated in its Opposition, starting at 18:10, that the burden of collecting, reviewing, and producing otherwise confidential settlement communications between Sequel's prior counsel and lawyers for the Environmental Research Center greatly outweighs any potential benefit.

The negotiation between the parties is not relevant to the application of the ERC consent judgment. First, whether the consent judgment has res judicata effect is a legal issue. Second, extrinsic evidence about the intent of the parties to a stipulated consent judgment, their interpretation of the judgment, or anything else, cannot be relevant in determining the application of a judgment under Proposition 65. Unlike "stipulated consent decrees," a Proposition 65 judgment must be evaluated by the court objectively for compliance with Cal. Health & Safety Code § 25249.7 (f)(4) (allowing out three statutory requirements for consent judgments). *C.f. MK Ballistic Sys. v. Simpson*, No. 07-C-00688 RMW, 2009 WL 86699, at *3 (N.D. Cal. Jan. 9, 2009) (interpreting judgment resolving violations of "California Health and Safety Code §§ 25188, 25189.2 and 25201 and California Business and Professions Code §§ 17200–17208."). Furthermore, again unlike other forms of stipulated judgments, Proposition 65 judgments are the product of input not just from the parties and the court, but from the Attorney General as well. Cal. Code Regs. tit. 11, § 3003 (requiring that the "motion [to approve the consent

1  judgment] and all supporting papers and exhibits shall be served on the Attorney General no later
2  than forty-five days prior to the date of the hearing of the motion.").  Any prior drafts of the
3  stipulated judgment in that prior matter are not informative of the final meaning of the judgment
4  and do not have any bearing on the legal issues here.
5        Furthermore, Plaintiff here does not identify any ambiguity in any term in the consent
6  judgment that is actually at issue here. *Roden v. AmerisourceBergen Corp.*, 155 Cal. App. 4th
7  1548, 1561 (2007) ("Unless the interpretation of a contract turns on the credibility of extrinsic
8  evidence, the matter is a question of law.") (citing *California Assn. of Prof'l Scientists v.*
9  *Schwarzenegger*, 137 Cal. App. 4th 371, 382 (2006) ("Here, the Attorney General does not point
10 to any extrinsic evidence relevant to the interpretation of [collective bargaining MOU adopted by
11 legislature].  Thus, the interpretation of that provision is a question of law").  Therefore, the
12 information sought by RFP 8 is not relevant to this dispute.
13       RFP 8 also places a significant burden on Sequel, as it is not in possession of the
14 communications between its counsel and opposing counsel for the ERC matter.  Sequel is no
15 longer represented by the law firm that negotiated its settlement of the ERC matter, which
16 culminated nearly five years ago.  Any emails in the possession of Sequel – as opposed to the
17 possession of its prior counsel –necessarily involve attorney-client communications because the
18 only plausible means by which Sequel would have obtained such documents would have been as
19 part of a communication from its counsel.  Collection and production of these documents would
20 necessitate painstaking review, redactions, and a large privilege log.  Plaintiff cannot justify
21 imposing this burden on Sequel for documents that are of little to no relevance.
22       For this reasons, the request seeks information that is outside the scope of discovery, as it
23 seeks information that is not relevant or proportional to the needs of the case.  Plaintiff's motion to
24 compel production in response to this request should, therefore, be denied.
25 //
26 //
27 //
28 //

### C. <u>Plaintiff's Position</u>

Defendant rejected two earlier compromises Plaintiff proposed concerning RFP No. 8 and proposed no alternatives.[1] Plaintiff then offered to narrow RFP No. 8 *even further* by limiting it to all non-privileged communications exchanged between Defendant and other parties concerning *the negotiation* of the Stipulated Consent Judgment in *ERC*, and all drafts of the Stipulated Consent Judgment exchanged with other parties. Limited to those documents, RFP No. 8 has laser-like focus on the specific issue of the intended scope and interpretation of the Stipulated Consent Judgment. *See Integrated Global Concepts, Inc. v. j2 Global, Inc.*, 2014 WL 1230910, at *4 (N.D. Cal. Mar. 21, 2014) (Contracting parties' intent is determined in part by "extrinsic evidence detailing the surrounding circumstances in which the parties negotiated the contract …"). Such communications and drafts exchanged between the parties would not be privileged, because "[n]umerous courts in this circuit have found that "Rule 408 does not warrant protecting settlement negotiations from discovery." *Conde v. Open Door Marketing, LLC*, 2018 WL 1248094 *2 (N.D. Cal. Mar. 12, 2018) (surveying authorities).

Defendant's arguments above should be rejected for five reasons. <u>First</u>, Defendant's burden and relevance arguments are unreasonable because they ignore that Defendant put the intended scope of the Stipulated Consent Judgment at issue by raising it as an affirmative defense, and Plaintiff has significantly narrowed the scope of the request. *See MLC Intellectual Property, LLC v. Micron Tech., Inc.*, 2018 WL 6175982, at *3 (N.D. Cal. Nov. 26, 2018) ("The Court agrees that Micron has put those sales at issue by asserting [as an affirmative defense] that allegedly infringing sales by subsidiaries and affiliates were permitted by licenses"); *Apple Inc. v. Samsung Electronics Co., Ltd.*, 306 F.R.D. 234, 241 (N.D. Cal. 2015) ("Samsung put the disputed documents at issue by raising affirmative defenses about inadvertence and whether Nokia's confidential information actually was used"). The requested documents are necessary to test, and

---

[1] Plaintiff first proposed narrowing the request to communications between Defendant and ERC, and later offered to withdraw RFP No. 8 if Defendant withdrew its position that the Stipulated Consent Judgment bars this case. Defendant rejected both proposals.

1  potentially rebut, any assertions that Defendant may make about the scope of the Stipulated

2  Consent Judgment and its supposed res judicata effect here.

3        Second, Defendant's contention that any responsive documents would either be in the

4  custody of its outside counsel or be privileged ignores the law.  If Defendant has responsive

5  communications with ERC or the California Attorney General, the fact that its counsel may have

6  forwarded those communications to Defendant does not make them privileged.  *See Robinson v.*

7  *Cty of San Joaquin*, 2014 WL 2109942, at *2 (E.D. Cal. May 20, 2014) (rejecting argument that

8  otherwise nonprivileged documents "are protected by the attorney-client privilege to the extent

9  they were transmitted to the County by County Counsel"); *Acosta v. Target Corp.*, 281 F.R.D.

10 314, 321 (N.D. Ill. 2012) ("funneling [non-privileged] communications past an attorney will not

11 make them privileged").  Nor may Defendant satisfy its burden to prove the elements of privilege

12 by asserting conclusory, blanket claims of privilege.  *See Wolk v. Green*, 2007 WL 3203050, at *2

13 (N.D. Cal. Oct. 29, 2007) ("Blanket refusals or boilerplate objections are insufficient to

14 assert privilege, so I have disregarded such assertions").  If Defendant's counsel forwarded non-

15 privileged communications to Defendant, then Defendant need only redact and log any privileged

16 communications further up the email chain.  Defendant's assertion that the process would require

17 a "painstaking review, redactions, and a large privilege log," smacks of exaggeration without any

18 evidence of the volume of responsive emails.  In any event, any purported burden is a function of

19 Defendant's decision to raise the Stipulated Consent Judgment as an affirmative defense.

20       Defendant's assertion that responsive email may be in the possession of outside counsel

21 also is a nonstarter.  "A party responding to a Rule 34 production request is under an affirmative

22 duty to seek that information reasonably available to it from its employees, *agents*, or others

23 subject to its control."  *Mitchell v. Chavez*, 2016 WL 6248262, at *3 (E.D. Cal. Oct. 25, 2016)

24 (emphasis added).  "Documents are in the 'possession, custody, or control' of the served party if

25 'the party has actual possession, custody or control, or has the legal right to obtain the documents

26 on demand."  *Uribe v. McKesson*, 2010 WL 892093, at *2 (E.D. Cal. March 9, 2010) (emphasis

27 added) (internal quotation omitted).  Hence, Defendant can request the responsive emails from its

28 outside counsel to the extent it does not already have them.

Third, Defendant contends that the rules governing the interpretation of consent judgments described in page 6 of Plaintiff's reply brief (Dkt. No. 45) do not apply to Proposition 65 cases. The decision it cites, *MK Ballistic Systems*, is not a Proposition 65 case and does not stand for that proposition. That decision also contradicts Defendant's position because it held that "extrinsic evidence must be considered at least initially by the court to determine whether the Consent Judgment" was susceptible to the interpretation advanced by one of the parties. 2009 WL 86699, at *4.

Fourth, Defendant argues Plaintiff "does not identify any ambiguity in any term in the consent judgment that is actually at issue here." That argument makes no sense because Defendant is the only party contending the Stipulated Consent Judgment applies, and it has not disclosed the basis for that position, or any arguments it may advance later. Moreover, Defendant's argument goes to the admissibility of the evidence, not its discoverability. Just because it is *possible* that the evidence may not be admissible for purposes of interpreting the Stipulated Consent Judgement (depending on what arguments Defendant ultimately makes), does not mean that the evidence is not discoverable. *Positive Techs, Inc. v. Sony Electronics, Inc.*, 2013 WL 1209338, at *2 (N.D. Cal. Mar. 25, 2013) ("relevancy for the purposes of admissibility should not be conflated with relevancy for the purpose of discovery").

Fifth, Defendants' argument that the Stipulated Consent Judgment is a "product of input not just from the parties and the court, but from the Attorney General," also does not support withholding relevant communications. Comments and requested changes from the Attorney General are part of the public record in the *ERC v. Sequel* docket, including some email from the Attorney General. If Defendant has other non-public communications with the Attorney General concerning the interpretation or intended scope of the Stipulated Consent Judgment, then there is no reason Defendant cannot produce those too.

//
//
//
//

## II. DISPUTE REGARDING THE SCOPE OF PRODUCTS AND COMMUNICATIONS ABOUT TESTING (RFP NOS. 9 & 10)

### A. Text of Requests

**REQUEST FOR PRODUCTION NO. 9**: All documents showing test results for testing described in Section 3.4 of the April 23, 2015, Stipulated Consent Judgment in *Environmental Research Center v. Sequel Naturals*, Inc., L.A. County Superior Court Case No. BC506027.

**REQUEST FOR PRODUCTION NO. 10**: All documents and communications generated during the CLASS PERIOD that reference or discuss testing of YOUR products, including but not limited to ICP/MS (inductively coupled plasma/mass spectroscopy) testing.

### A. Sequel's Position

Sequel has offered to produce non-privileged, non-attorney work product test results, including certificates of analysis from third-party labs, for the four products for which test results have been disclosed and Sequel's generally applicable guidelines on heavy metal testing.[2] Plaintiff maintains that it is entitled to production of all heavy metal testing for all products in all four product lines referenced in the Complaint. Plaintiff's request is too broad and encompasses information that is outside the scope of pre-class certification discovery.

First, Plaintiff should not be permitted to use the discovery process to compel production of its initial evidence for its class allegations – Plaintiff Bland only has a claim as to the single product he purchased, Vega Essentials Vanilla – evidence that Plaintiff needed to possess, per Rule 11, *prior* to the filing of a putative class action.

Since the filing of Sequel's opposition, Plaintiff has disclosed testing showing lead and cadmium in four Vega products, products for which Sequel has now agreed to provide responses and documentation,[3] but Plaintiff has offered no valid grounds for expanding discovery of testing beyond those products. Contrary to Plaintiff's intimations, one flavor within a product line –

---

[2] A fifth product, Sport Performance Protein Berry, is, save for a change in the name of the product and related labeling, identical to Sport Premium Protein Berry, a product tested by Plaintiff. As such, Sequel offered to include testing for this product in its production.

[3] Plaintiff has testing showing the presence of lead and cadmium in the following four products: Vega Essentials Vanilla –VEG01112; Vega Sport Premium Protein Berry- VEG00854; Vega One All-In-One Berry - VEG00521; Vega Protein & Greens Berry - VEG00642.

Essentials Vanilla vs. Essentials Chocolate, for example – is not identical to another. Each flavor has its own Stock Keeping Unit (SKU), its own product ID, its own UPC, and its own unique formula. Most critically, although the degree of variation within product lines varies from line to line, each flavor has unique levels of heavy metals. To suggest that Vanilla is the same as Chocolate, and therefore that the latter is fair game for discovery despite the additional burden, is simply inaccurate.

Second, and more fundamentally, Plaintiff has not provided any definition to the scope of products at issue except that it includes every version of every product within the four product lines identified in the complaint. But merely *alleging* that a product is at issue for the class is not enough. If it were enough, then every putative class action would be a fishing expedition. Plaintiff, moreover, has not explained how the additional products are "substantially similar" enough to justify discovery beyond that which any plaintiff, Bland or an unnamed class member, has been shown to have standing to pursue. For the products for which Plaintiff's counsel has test results, e.g. Essentials Vanilla, Sequel does not dispute their inclusion in discovery on standing grounds or any others. By contrast, Bland should not be permitted to *assume* the inclusion of Essentials Chocolate, as an example of a product on which Bland seeks discovery but for which he has no evidence of lead or cadmium levels, let alone levels sufficient to state a claim.

Plaintiff claims it needs discovery to determine what is substantially similar, but this inverts the standard on its head. Plaintiff cannot define "substantially similar" without first defining its theory of the case. Specifically, what is the level of concentration, or level of exposure, to lead or cadmium which makes a consumable product's labeling or advertising misleading? If Plaintiff needs additional testing to answer this question, then he was free to do additional testing prior to filing this lawsuit. Plaintiff decided to test only four products and is now hoping this Court will backfill his failure to do additional analysis by allowing discovery of Sequel's testing on additional products. Until Plaintiff defines his claims, however, the Court and parties cannot reasonably determine what products are subject to those claims and what products are substantially similar. Any attempt at defining the scope of discovery without that, therefore, is just guesswork.

Finally, Sequel's position is not that Plaintiff is not entitled to full and complete discovery for potential class claims, including disclosure of Sequel's test results for those products Plaintiff has tested, but that Plaintiff must first show that (1) his claims as to those additional products comport with Rule 11's standards and (2) that he can identify the general criteria which separate a product for which there is a claim and those for which there is not. To date, he has done neither.

### B. Plaintiff's Position

Defendant's arguments above are largely the same as those raised in its Opposition brief, and are rebutted in Plaintiff's Reply Brief, at pages 7:1-10:28. Plaintiff briefly makes three additional points based on Defendant's arguments above.

First, Defendant is not only arbitrarily withholding testing of certain flavors, but also is arbitrarily withholding emails and related email strings attaching test results, which are responsive to RFP No. 10. Defendant is taking this extreme position even after Plaintiff offered to narrow the scope of RFP No. 10 to emails and related email strings where a test result was attached. There is no legal basis to withhold such emails, and the only conceivable motivation to do that is to avoid disclosure of incriminating admissions or other information about Defendant's testing.

Second, Defendant's response above highlights how Defendant is relying on factual assertions about the purported dissimilarities in the products, but withholding evidence that would tend to prove or disprove those assertions. *See supra* ("Each flavor has … its own unique formula [and] … has unique levels of heavy metals"). That is improper. "The rules cannot be read as imposing a 'Catch-22' that would require proof of similarity before a party may discover evidence of similarity." *Albee v. Continental Tire N. Am., Inc.*, 2010 WL 1729092, at *7 (E.D. Cal. Apr. 27, 2010). It also does not matter who has the burden of proof regarding substantial similarity because under Rule 26(b)(1), "parties may obtain discovery regarding *any* nonprivileged matter that is relevant to *any* party's claim or defense." The practical consequences of Defendant's position, if it is adopted, are easy to predict. At class certification, Defendant will argue that the scope of the certified claims should be limited based on purported dissimilarities among products after withholding documents that rebut that position, and cherry-picking evidence that Defendant contends supports its position.

  <u>Third</u>, Defendant references Rule 11 twice, and continues to take the position that its discovery obligations are somehow contingent on Plaintiff's pre-suit testing. That is the third time (at least) that Defendant has advanced a position in this case contrary to decisions of the Ninth Circuit and Judge Seeborg.[4] "[Rule 11] is not a discovery device. It is not to be used to require plaintiff to offer proof of his case through supplemented Rule 11 certificates before discovery and before trial." *Chipanno v. Champion Intern. Corp.*, 702 F.2d 827, 831 (9th Cir. 1983).

  In *Koller v. Med Foods, Inc.*, 2015 WL 13653887, at *3 (N.D. Cal. Jan. 6, 2015), Judge Seeborg explained "there is still no requirement that a plaintiff include evidence in a complaint, much less prove the case at [the pleading] stage." He then noted that "the testing conducted by counsel … referenced in the complaint … may bear on the reasonableness of counsel's pre-suit investigation, but they are not controlling as to whether the complaint states a claim." *Id.* By the same reasoning, pre-suit testing has no legal bearing on the scope of discovery. Rule 11 and Rule 26 serve different purposes, and a defendant cannot avoid its own discovery obligations by flinging accusations of Rule 11 violations. *See SAGE Electrochromics Inc. v. View Inc.*, 2013 4777164, at *3 (N.D. Cal. Sept. 6, 2013) ("[defendant's motion] veers closely to making a Rule 11 argument about the adequacy of SAGEs pre-suit investigation …the court notes that the merits of such an argument are not properly before the court at the discovery stage of the proceedings"); *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 585 F. Supp. 69, 72 (E.D. Pa. 1983) (citing *Chipanno* and explaining "A Rule 11 motion cannot be used as a substitute for appropriate discovery by the movant or to prevent discovery of the movant.").

//
//
//
//

---

[4] Jan. 18, 2019 Order, 4:9-10 ("The Ninth Circuit has explicitly rejected Defendants' interpretation of the standing requirement."); *see also* Opening Brf. (Doc. No. 36), at 3:6-4:11 (discussing *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) and *Kutza v. Williams-Sonoma, Inc.*, 2018 WL 5886611, at *3 (N.D. Cal. Nov. 9, 2018) (Seeborg, J.); Reply Brf. (Doc. No. 45), at 9:19-10:5 (discussing *Morgan v. Apple*, 2018 WL 2234537, at *9 (N.D. Cal. May 16, 2018) (Seeborg, J.)).

## III. DISPUTE REGARDING THE SCOPE OF REQUESTS FOR EMAILS (RFP NO. 11)

### A. Text of Requests

**REQUEST FOR PRODUCTION NO. 11**: All documents and communications that include the words "cadmium," "lead," "heavy metal" or "heavy metals." Excluded from this request are any documents and communications where the word "lead" does not refer to the element lead.

### B. Sequel's Position

RFP No. 11 seeks a broad category of both documents and electronic communications, essentially encompassing every document in Sequel's possession that includes the referenced words and phrases without regard for custodian, date, author, recipient, or actual subject matter. To respond to RFP 11 would require Sequel and its counsel to go through more than 100,000 documents. (*See* ECF Doc. No. 42 at ¶ 13.)

Yet, the documents are of little relevance to this case. Plaintiff's claims involve whether consumers have been misled by Sequel's product – internal documents and correspondence will not, cannot, bear on consumers perceptions or other consumer behaviors, which are objective facts. Certainly there are categories of documents responsive to this request that bear on this issue and Sequel has agreed to produce those as part of other requests. Specifically, as stated above, Sequel has agreed to produce test results for the four products[5] for which Plaintiff has performed testing and generally applicable guidelines on heavy metal testing. Sequel has also agreed to produce communications with consumers concerning heavy metals, emails concerning consumer surveys relating to heavy metals, and communications with labdoor.com, cleanlabelproject.org, consumerreports.org, or other reporters regarding heavy metals. Accordingly, Sequel has agreed to produce communications and documents that are relevant to this case. Plaintiff's request for a broad collection of documents merely referencing certain words is unnecessarily burdensome. Plaintiff has not made any argument that there are additional communications that would be relevant to this dispute.

---

[5] See, *supra*, FN. 1.

Plaintiff proposed as a compromise the following Boolean string search: ("Cadmium" OR "lead" OR "heavy metal" OR "heavy metals") AND ("Shake" OR "Powders" OR "Protein" OR "Sport Performance" Or "Essentials" OR "All-In-One" OR "Greens").  If the search term results in a hit count of more than 2,000 documents, Plaintiff offered to meet-and-confer regarding appropriate steps to narrow the search, such as by modifying the search term or limiting the documents by custodian.  This proposal is not sufficient because the search seeks information and countless documents that are not relevant to this dispute.  As just a few examples, RFP No. 11 would encompass every testing order, every receipt for a testing order, and every finished product or ingredient referencing a specification, certificate of analysis, formula sheet, etc., for every lot of every shake or powder ever even considered for development.  Additionally, the Request would sweep up every email exchanged to or from any employee with both in-house and outside counsel regarding Proposition 65 compliance.

The burden RFP 11 places on Sequel, even if the Boolean search is used, far outweighs the benefit of the resulting discovery to this case.  Sequel has already agreed to produce the relevant categories of documents and RFP 11 is unnecessary.  For these reasons, Plaintiff's motion to compel production in response to RFP 11 should be denied.

### C. Plaintiff's Position

Defendant has rejected RFP No. 11 without offering any compromise proposal for the production of relevant emails.  Defendant's argument that RFP No. 11 is burdensome and would "require Sequel and its counsel to go through more than 100,000 documents" is misleading and irrelevant because Plaintiff has proposed an alternative Boolean search term that would only capture emails that reference *both* protein powders and heavy metals, and permits additional meet and confer if the hit count exceeds 2,000 non-duplicative documents, which is a comparatively paltry number of documents in complex litigation.  See Reply Brf., 11:3-12:7.  *Cf. Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.,* 297 F.R.D. 99, 103 (S.D.N.Y. 2013) ("The defendants used roughly 80,000 search terms"); *Jones v. Nat'l Counsel of Young Men's Christian Assocs.* of US, 2011 WL 7568591 at *1 (N.D. Ill. Oct. 11, 2011) (at least 174 search terms at issue).  As a matter of law, Defendant's conclusory assertion that the revised Boolean search term

1  seeks "countless documents" cannot support denying the motion to compel. *See Gilbert v.
2  Citigroup, Inc.*, 2009 WL 10692463, at *6 (N.D. Cal. Apr. 2, 2009) ("While Ms. Hall's
3  declaration describes the nature of the burden that the requested discovery would place on
4  Citibank, she fails to describe how that burden is *undue*. Responding to discovery requests in
5  nationwide class actions is burdensome, but burden alone is no reason to deny discovery of
6  relevant issues"); *Pom Wonderful LLC v. Coca-Cola Co.*, 2009 WL 10655335, at *4 (C.D. Cal.
7  Nov. 30, 2009) (conclusory declaration of burden insufficient to resist discovery).

8  It is self-evident that Defendant's internal communications regarding the heightened levels
9  of lead and cadmium in the products included in the revised Boolean search term are directly
10 relevant to the fraud allegations that pervade the First Amended Complaint, including for the
11 elements of knowledge and intent. *See*, *e.g.*, FAC (ECF No. 34) ¶¶ 85-90 (alleging fraud as a
12 cause of action). These communications are party admissions about what Defendant knew about
13 the products and how it decided to respond to that information. Defendant cannot and does not
14 cite authority for its position that its internal communications are irrelevant to the claims asserted
15 in this action.

16 Moreover, the practical consequence of Defendant's positions here, if adopted, is that it
17 would have to produce barely any emails at all in this case. Defendant refuses to produce email
18 attaching or discussing testing responsive to RFP No. 10, and has only agreed to produce certain
19 communications with consumers, email attaching consumer surveys, and communications with
20 consumer reports or other organizations—none of which is expected to amount to a large volume
21 of documents.

22 The Court should order Defendant to disclose the hit counts obtained with the revised
23 Boolean search term, and if the results are greater than 2,000, meet and confer with Plaintiff
24 regarding further ways to limit the search, such as by custodian or additional search term
25 connectors.

26
27
28

| | | |
|---|---|---|
| 1 | Dated: March 28 2019 | DLA PIPER LLP (US) |

By: */s/ Gregory Sperla*
ANGELA C. AGRUSA
GREGORY SPERLA
TAMANY VINSON BENTZ
Attorneys for Defendant
Sequel Natural, ULC

**BURSOR & FISHER, P.A.**

By: */s/ Joel D. Smith*
　　　Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Thomas A. Reyda (State Bar No. 312632)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
　　　jsmith@bursor.com
　　　treyda@bursor.com

*Counsel for Plaintiff*