ANGELA C. AGRUSA (SBN 131337)
GREGORY SPERLA (SBN 278062)
TAMANY VINSON BENTZ (SBN 258600)
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Tel:       310.595.3000
Fax:      310.595.3300
Email:   angela.agrusa@dlapiper.com
             greg.sperla@dlapiper.com
             tamany.bentz@dlapiper.com

Attorneys for Defendant
SEQUEL NATURALS, ULC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW BLAND, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SEQUEL NATURAL, ULC, D/B/A VEGA,<br><br>Defendant. | Case No.  3:18-cv-04767-RS (RMI)<br><br>The Hon. Richard Seeborg, Courtroom 3<br><br>**DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND**<br><br>**Date:          July 18, 2019**<br>**Time:          1:30 p.m.**<br>**Courtroom:  3**<br>**Judge:        Hon. Richard Seeborg** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION....................................................................................................7

II.     BACKGROUND......................................................................................................8

III.    LEGAL STANDARD ...........................................................................................10

IV.     PLAINTIFF'S REQUEST SHOULD BE DENIED BECAUSE THE PROPOSED
        AMENDMENTS ARE FUTILE ...........................................................................10

        A.      The CLRA Claim in the SAC Is Futile Because the New Defendants Failed
                to Provide Notice of Their Claims. ...........................................................10

        B.      The SAC Includes Claims For Equitable Relief That Fail As A Matter Of
                Law..............................................................................................................10

        C.      The Fifth Claim (Breach Of Implied Warranty) Is Futile Because There Is
                No Privity With Vega And The Vega Products Are Fit For Their Intended
                Purpose. ......................................................................................................14

                1.      There is no Privity. .........................................................................14

                2.      The SAC Cannot Plead That The Vega Products Are Unfit For Their
                        Intended Purpose. ...........................................................................15

        D.      The Sixth Claim (Strict Liability–Failure To Warn) Fails Because There Is
                No Physical Injury.......................................................................................18

        E.      The First, Second, Third, Fourth, Seventh, And Eighth Claims (Consumer
                Protection, Common Law Fraud, And Unjust Enrichment) Are Futile
                Because They Do Not Satisfy Rule 9(b). ..................................................19

        F.      The UCL Claim Based On "Unfair" And "Unlawful" Conduct Fails. ................22

V.      PLAINTIFF'S REQUEST SHOULD BE DENIED DUE TO PREJUDICE ..................23

VI.     CONCLUSION .....................................................................................................24

DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO. 3:18-cv-04767-RS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Actimmune Mktg. Litig.*,
  2009 WL 3740648 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 Fed. Appx. 651 (9th
  Cir. 2011) ........................................................................................................23

*Adams v. I–Flow Corp.*,
  2010 WL 1339948 (C.D. Cal. Mar. 30, 2010) .........................................................13

*Azoulai v. BMW of N. Am. LLC*,
  2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) .........................................................21

*Berryman v. Merit Prop. Mgmt., Inc.*,
  152 Cal. App. 4th 1544 (2007)............................................................................20

*Bird v. First Alert, Inc.*,
  2014 WL 7248734 (N.D. Cal. Dec. 19, 2014) .................................................12, 14

*Blanco v. Baxter Healthcare Corp.*,
  158 Cal. App. 4th 1039 (2008)............................................................................14

*Browning v. Unilever United States, Inc.*,
  2018 WL 6615064 (C.D. Cal. Dec. 17, 2018) .........................................................21

*Carmen Otero, et al. v. Zeltiq Aesthetics, Inc. Additional Party Names: Abbey
  Lerman*,
  2018 WL 3012942 (C.D. Cal. June 11, 2018)............................................................21

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008)............................................................................14

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.*,
  2015 WL 4941780 (N.D. Cal. Aug. 19, 2015) .................................................12, 18

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir.2003)............................................................................10

*Envtl. Law Found. v. Beech-Nut Nutrition Corp.*,
  235 Cal. App. 4th 307 (2015)............................................................................17

*Fieldstone Co. v. Briggs Plumbing Prod., Inc.*,
  54 Cal. App. 4th 357 (1997)............................................................................18

*Franklin v. Gwinnett Cnty. Pub. Sch.*,
  503 U.S. 60 (1992) ............................................................................10

DLA PIPER LLP (US)
WWW.DLAPIPER.COM

*Frenzel v. AliphCom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014) .......................................................................21

*Gardner v. Safeco Ins. Co. of Am.*,
   2014 WL 2568895 (N.D. Cal. June 6, 2014) ...........................................................12

*Gray v. Toyota Motor Sales, U.S.A.*,
   2012 WL 313703 (C.D. Cal. Jan. 23, 2012), *aff'd*, 554 F. App'x 608 (9th Cir.
   2014)........................................................................................................................19

*Harris v. R.J. Reynolds Vapor Co.*,
   2016 WL 6246415 (N.D. Cal. Sept. 30, 2016)........................................................22

*Huitt v. S. California Gas Co.*,
   188 Cal. App. 4th 1586 (2010)................................................................................19

*KB Home v. Superior Court*,
   112 Cal. App. 4th 1076 (2003)................................................................................18

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)............................................................................20, 21

*Keegan v. Am. Honda Motor Co.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ............................................................................16

*Ladore v. Sony Computer Ent. Am., LLC*,
   75 F. Supp. 3d 1065 (N.D. Cal. 2014) ....................................................................19

*Martin v. Tradewinds Beverage Co.*,
   2017 WL 1712533 (C.D. Cal. Apr. 27, 2017)....................................................14, 15

*Mocek v. Alfa Leisure, Inc.*,
   114 Cal. App. 4th 402 (2003)..................................................................................15

*Mullins v. Premier Nutrition Corp.*,
   No. 13-CV-01271-RS, 2018 WL 510139 (N.D. Cal. Jan. 23, 2018) (Seeborg, J.)....................12

*Munning v. Gap, Inc.*,
   238 F. Supp. 3d 1195 (N.D. Cal. 2017) .......................................................11, 12, 14

*Philips v. Ford Motor Co.*,
   726 F. App'x 608 (9th Cir. 2018)............................................................................11

*Potter v. Firestone Tire & Rubber Co.*,
   6 Cal. 4th 965 (1993)..............................................................................................21

*Prudential Home Mortgage Company, Inc. v. Sup. Ct.*,
   66 Cal. App. 4th 1236 (1998)..................................................................................10

DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO. 3:18-cv-04767-RS

*Punian v. Gillette Co.*,
   2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ........................................................23

*Rambus, Inc. v. STMicroelectronics N.V.*,
   Case No. 10-05449, 2013 WL 12343708 (N.D. Cal. March 18, 2013) ....................20

*Red v. Gen. Mills*, *Inc.*,
   2015 WL 9484398 (C.D. Cal. Dec. 29, 2015) ...........................................15, 16, 17

*Rhynes v. Stryker Corp.*,
   2011 WL 2149095 (N.D. Cal. May 31, 2011) ..................................................11, 13

*Ries v. Arizona Beverages USA LLC*,
   Case No. 10-01139 RS, 2013 WL 12172652 (N.D. Cal. Feb. 5, 2013)....................23

*Riva v. Pepsico, Inc.*,
   82 F. Supp. 3d 1045 (N.D. Cal. 2015) ......................................................................19

*Rossi v. Whirlpool Corp.*,
   2013 WL 5781673 (E.D. Cal. Oct. 25, 2013) ...........................................................16

*Smith v. Ford Motor Co.*,
   462 Fed. Appx. 660 (9th Cir. 2011) ..........................................................................22

*Stearns v. Select Comfort Retail Corp.*,
   2009 WL 1635931 (N.D. Cal. June 5, 2009) ...........................................10, 16, 19

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017).................................................................................21

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012).................................................................................21

*Zapata Fonseca v. Goya Foods Inc.*,
   2016 WL 4698942 (N.D. Cal. Sept. 8, 2016)..........................................11, 12, 13

**Statutes**

Cal. Civ. Code § 1782(a)........................................................................................10

Cal. Code Regs. tit. 27, § 25703............................................................................17

Cal. Health & Safety Code § 25249.10...........................................................17, 18, 22

California Consumer Legal Remedies Act................................................................7

CLRA ........................................................................................................... *passim*

Consumers Legal Remedies Act ...............................................................................8

UCL ........................................................................................................................... *passim*

Unfair Competition Law ....................................................................................................8

**Other Authorities**

Federal Rules of Civil Procedure Rule 15(a) ..................................................................10

Rule 9(b)..................................................................................................................19, 20, 21

DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO. 3:18-cv-04767-RS

DLA Piper LLP (US)
WWW.DLAPIPER.COM

# I.      **INTRODUCTION**

After a year of litigation, including Plaintiff Andrew Bland's CLRA demand letter, amended pleadings, several months of discovery – including Plaintiff's deposition --  and discovery related disputes, Plaintiff now seeks to add two new plaintiffs with duplicative, futile claims to this already weak action.  Plaintiff's request has not been made in good faith and is prejudicial to Defendant Sequel Natural ULC, d/b/a Vega ("Vega").   Plaintiff failed to raise the potential addition of new plaintiffs on several occasions when it was most important – when the parties were discussing scheduling.  Plaintiff never expressed any intention or desire to add two new plaintiffs to this case until after the weaknesses in his claims were evidenced through discovery, including his deposition.  The assertion of duplicative, futile claims in the proposed Second Amended Complaint (SAC), however, cannot salvage Plaintiff's troubled case and Plaintiff's request should be denied.

Plaintiff's request is prejudicial because it was a surprise to Vega.  Plaintiff never raised the potential addition of new plaintiffs in his Case Management Statement or during the Scheduling Conference.  The only amendments addressed in Plaintiff's scheduling filings are those necessary to address Vega's motion to dismiss.

Nor did Plaintiff raise the issue of two additional plaintiffs while recently negotiating new deadlines for discovery and class certification with Vega.  After weeks of negotiating those deadlines, the parties filed a stipulation with the Court on May 29, 2019.  The next day, Plaintiff emailed Vega to raise the addition of two new plaintiffs.  Plaintiff's delay denied Vega the opportunity to consider the effect that two new plaintiffs would have on the schedule in this case.  At a minimum, Vega would have asked for more time before class certification to ensure that it could properly investigate and take discovery from each of the **two** new plaintiffs.

Nevertheless, the claims in the proposed SAC are futile for several reasons and Plaintiff's proposed amendment, therefore, should be rejected:

- Neither of the new plaintiffs complied with the statutory notice requirement under the California Consumer Legal Remedies Act ("CLRA").  Accordingly, the proposed CLRA claims are untimely.

- Neither of the new plaintiffs can assert claims for equitable relief because both Plaintiff's First Amended Complaint ("FAC") and the proposed SAC allege that legal remedies are inadequate. It is well settled that equitable claims must be dismissed when legal remedies are plead based on the same facts.

- The implied warranty claims in the proposed amendment fail because the proposed plaintiffs are not in privity with Vega and because the accused protein powders are fit for their ordinary purpose—human consumption

- The proposed strict liability claim fails because the proposed plaintiffs have not alleged physical injury and cannot show physical injury.  It is well settled that strict liability does not lie when the alleged loss is purely economic.

Furthermore, adding these new plaintiffs is inappropriate and wholly unnecessary. Plaintiff admits their claims are duplicative of Plaintiff's claims and that they add nothing new. Plaintiff also must admit that the proposed plaintiffs are already included in this case as putative class members.  Their interests, therefore, are already represented unless, of course, these proposed plaintiffs contend that Plaintiff is not an adequate class representative.

For these reasons, Plaintiff's motion for leave to amend should be denied.

## II.     **BACKGROUND**

Vega manufactures, markets, and sells plant-based food products, specializing in sport nutrition, protein powders, and shakes.   On June 26, 2018, Plaintiff Bland sent a notice letter to Vega, which alerted the company to his CLRA claim.  Declaration of Greg Sperla at ¶ 2 [hereinafter Sperla Decl.].

Plaintiff subsequently filed this action on August 7, 2018.  (Dkt. 1.)  Plaintiff Bland alleges that he purchased a product in the Vega Essentials protein powder line— although he does not identify which—from a CVS pharmacy "because it promised to deliver protein and another nutrients."  (FAC ¶ 6.)  The FAC alleges that Vega failed to warn consumers that the Vega products allegedly expose consumers to two heavy metals, lead and cadmium, which, if present at certain levels, may exceed Proposition 65's safe harbor thresholds.  (Dkt. 34 at 6-7, ¶ 20)  The FAC alleges this is a violation of the Unfair Competition Law ("UCL") and the Consumers Legal

-8-

DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO. 3:18-cv-04767-RS

1    Remedies Act ("CLRA").  The FAC also asserts claims for Breach of Implied Warranty, Strict

2    Liability–Failure to Warn, Fraud, and Unjust Enrichment based on the same underlying

3    allegations.

4           On October 17, 2018, Vega filed a motion to dismiss the complaint.  (Dkt.14).  On

5    November 8, 2018, Plaintiff filed a Separate Case Management Statement, which makes no

6    reference to amending his complaint to add additional class members; rather, the only amendments

7    mentioned address Vega's motion to dismiss.  (Dkt. 18 at 3:11-18).   Plaintiff opposed the motion

8    to dismiss on November 14, 2018.  (Dkt. 22).  On January 18, 2019, the Court granted in part and

9    denied in part the motion to dismiss.  (Dkt. 30).  The Court ordered Plaintiff to file his FAC, which

10   was subsequently filed on February 8, 2019.  (Dkt. 34.)  Vega answered the FAC on February 22,

11   2019, denying Plaintiff's claims.  (Dkt. 39).

12          The parties have been engaged in discovery and discovery disputes since the filing of the

13   case management statements in November 2018.  Discovery has included the deposition of

14   Plaintiff Bland on April 12, 2019, during which he gave testimony undermining his claims and

15   status as a class representative.  For instance, when asked about how he decided to bring a claim

16   against Vega, Plaintiff testified that his roommate is a paralegal at Plaintiff's counsel's law firm

17   and he brought the claims to Plaintiff's attention:

18                Q. How did the Clean Label Project article come to your attention?
                  A.  It was sent over from a friend that was aware that I was consuming
19       Vega.
                  Q. Who was the friend?
20                A. Jared Hazlett.
                  Q. Jared Hazlett?
21                A. Yes.
                  Q. Who is your roommate?
22                A. Yes.
                  Q. And apparently an employee at Mr. Reyda's firm?
23                A. Yes.
                  ***
24
                  Q. But in any event, Mr. Hazlett put you in touch with his law firm?
25                A. Correct

26

27   Sperla Decl. at ¶ 4.

28          Now, almost a year after filing the putative class action and months of discovery, Plaintiff

DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO. 3:18-cv-04767-RS

requests that Mr. Valdez and Ms. Castelein be added to this case as named plaintiffs and that a Second Amended Complaint be allowed so that these new plaintiffs can assert the same claims as Plaintiff Bland.  (Dkt. 56-1.)

## III.   LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of pleadings. In deciding whether to grant leave to amend, the Court generally considers five non-exclusive factors: (1) undue delay; (2) bad faith or dilatory motives; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party if the amendment were allowed, and (5) the futility of the amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir.2003).

## IV.   PLAINTIFF'S REQUEST SHOULD BE DENIED BECAUSE THE PROPOSED AMENDMENTS ARE FUTILE[1]

### A.   The CLRA Claim in the SAC Is Futile Because the New Defendants Failed to Provide Notice of Their Claims.

The CLRA claim in the SAC is futile because it is untimely. The CLRA requires that a claimant provide a demand, in writing, for a repair "[t]hirty days or more prior to the commencement of an action for damages." Cal. Civ. Code § 1782(a).  Neither Mr. Valdez nor Ms. Castelein provided notice of their CLRA claim.  As a result, the SAC fails to comply with the requirements of the CLRA and is, therefore, futile, and should be dismissed.  *See Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *15 (N.D. Cal. June 5, 2009) (dismissing CLRA claim with prejudice where the plaintiff failed to provide written notice of CLRA claim 30 days prior to commencement of action).

### B.   The SAC Includes Claims For Equitable Relief That Fail As A Matter Of Law.

It is well-settled that a plaintiff is not entitled to pursue equitable relief if an adequate remedy at law may exist.  *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 62 (1992) ("[I]t

---

[1] Vega did not include these arguments in its motion to dismiss the original Complaint because it chose to focus on other issues and raise these arguments as part of a motion for judgment on the pleadings or motion for summary judgment.  Vega is filing a motion for judgment on the pleadings concurrently herewith.

DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO. 3:18-cv-04767-RS

is axiomatic that a court should determine the adequacy of damages at law before resorting to equitable relief."); *Prudential Home Mortgage Company, Inc. v. Sup. Ct.*, 66 Cal. App. 4th 1236, 1249-50 (1998) (holding statutory relief under the UCL "is subject to fundamental equitable principles, including inadequacy of the legal remedy."). Thus, a claim must be dismissed, or judgment entered, if a plaintiff's only remedy is equitable relief and there is an adequate remedy at law. Here, the First, Second, and Third Claims (each brought under the UCL), and the Eighth Claim (Unjust Enrichment) are futile because they only allow for equitable relief and the SAC concedes there is an adequate legal remedy. The SAC pleads legal remedies in the Fourth Claim (CLRA), Fifth Claim (Breach of Implied Warranty) and Eighth Claim (Fraud). These causes of action are likewise futile as a matter of law to the extent equitable relief is demanded.[2]

It is indisputable that the UCL and unjust enrichment claims are equitable in nature and provide only equitable relief. *Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *1 (N.D. Cal. Sept. 8, 2016); *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *3-4 (N.D. Cal. May 31, 2011). As explained by the Ninth Circuit, the equitable remedies available under these claims "are 'subject to fundamental equitable principles, including inadequacy of the legal remedy.'" *Philips v. Ford Motor Co.*, 726 F. App'x 608, 609 (9th Cir. 2018) (affirming dismissal of injunctive relief claims for failure to plausibly allege inadequate legal remedies). Accordingly, plaintiffs are "***required*** to plead the inadequacy of their legal remedies to state a claim for injunctive [and equitable] relief." *Id.* (emphasis added). "Where the claims pleaded by a plaintiff ***may*** entitle her to an adequate remedy at law, equitable relief is unavailable." *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *3-4 (N.D. Cal. May 31, 2011) (dismissing UCL claim with prejudice) (emphasis in original). "It matters not that a plaintiff may have no remedy if her other claims fail." *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203-04 n.7 (N.D. Cal. 2017) (dismissing UCL and FAL claims

---

[2] The CLRA claim includes a demand for equitable relief in the form of "an order enjoining the above-described wrongful acts and practices of Defendant," in addition to "monetary damages." (Dkt. 56-1 at ¶ 67.) The fraud claim likewise seeks both legal and equitable relief. The SAC avers that "[t]he fraudulent actions of defendant caused damage to Plaintiffs and members of the Class, who are entitled to damages and other legal and equitable relief as a result." (*Id.* at ¶ 90.)

with prejudice "[e]ven though the Court allowed Plaintiff's UCL and FAL claims to survive
Defendants' first motion to dismiss").

Nor can the SAC circumvent this well-established rule by pleading in the alternative.
Where a plaintiff pleads legal and equitable claims in the alternative, based on the same alleged
misconduct, legal remedies are necessarily adequate. *Duttweiler v. Triumph Motorcycles (Am.)
Ltd.*, 2015 WL 4941780, at *9 (N.D. Cal. Aug. 19, 2015) ("Courts routinely dismiss UCL claims
at the pleading stage on account of the plaintiff's failure to plead facts demonstrating an
entitlement to equitable relief. . . . This is true even where a plaintiff attempts to plead equitable
relief in the alternative, as [plaintiff] purports to do here."); *see also Bird v. First Alert, Inc.*, 2014
WL 7248734, at *6 (N.D. Cal. Dec. 19, 2014) (dismissing UCL claim with prejudice because
CLRA claim may provide an adequate legal remedy, notwithstanding that CLRA claim was
inadequately pleaded). The UCL, unjust enrichment, warranty and CLRA claims are all based on
the same facts—the alleged misrepresentations that the products were healthy when the products
allegedly contain heavy metals.

It is undeniable that the CLRA, express warranty, and implied warranty claims "may"
entitle the proposed plaintiffs to an adequate remedy at law in the form of monetary damages. *See
id.*, at *2 (dismissing equitable claims because the plaintiff may have an "adequate remedy at law
under a claim for damages pursuant to the CLRA"); *see also Gardner v. Safeco Ins. Co. of Am.*,
2014 WL 2568895, *8 (N.D. Cal. June 6, 2014) (dismissing UCL claim because money damages
available if plaintiff prevailed on his breach of contract claims, and plaintiff failed to explain how
his alleged injury could not be remedied by payment of damages).

Under similar circumstances "courts in the Northern District have routinely dismissed
equitable claims brought under the UCL and CLRA on the pleadings—including claims for
restitution—where the plaintiff fails to establish that there is no adequate remedy at law
available." *Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2018 WL 510139, at *2
(N.D. Cal. Jan. 23, 2018) (Seeborg, J.); *Munning*, 238 F. Supp. 3d at 1203-04 ("courts in this
district have barred claims for equitable relief—including claims for violations of California

DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO. 3:18-cv-04767-RS

1    consumer protection statutes—at the motion to dismiss stage where plaintiffs have alleged other

2    claims presenting an adequate remedy at law.").

3         For example, in *Zapata Fonseca v. Goya Foods Inc.*, the plaintiff alleged that the

4    defendant-manufacturer falsely advertised food products as containing octopus when, in fact, the

5    products contained squid.  2016 WL 4698942, at *1 (N.D. Cal. Sept. 8, 2016).  The plaintiff

6    asserted claims under the UCL, FAL, and CLRA, in addition to common law fraud, breach of

7    warranty, and unjust enrichment, all based on the same allegedly false advertising.  *Id.*

8    Specifically, the plaintiff sought equitable restitution and injunctive relief under the UCL, FAL,

9    and doctrine of unjust enrichment; injunctive relief under the CLRA; and monetary damages for

10   fraud and breach of warranty.  *Id.* at *7.  The court, however, dismissed the claims for equitable

11   restitution and injunctive relief under the UCL, FAL, CLRA, and unjust enrichment, reasoning

12   that the plaintiff's remaining causes of action "allow Plaintiff to recover monetary damages and

13   thus provide Plaintiff a remedy at law."  *Id.*  In other words, "[t]he 'traditional' equitable remedy

14   is an injunction" and "[t]he 'traditional' legal remedy is monetary damages."  *Id.*  And a plaintiff

15   cannot seek equitable remedies in a false advertising action—including equitable restitution—

16   without plausibly alleging that monetary damages are inadequate.  *Id.*  Accordingly, where, as

17   here, "Plaintiff's CLRA, UCL, FAL, and unjust enrichment causes of action rel[y] upon the same

18   factual predicates as . . . [P]laintiff's legal causes of action … they must be dismissed."  *Id.*

19        Moreover, the Fourth Claim (CLRA) and Seventh Claim (Fraud) are legal claims seeking

20   injunctive relief—the CLRA claim includes a demand for equitable relief in the form of "an order

21   enjoining the above-described wrongful acts and practices of Defendant" (Dkt. 56-1 ¶ 67), and

22   Plaintiff's fraud claim avers that "[t]he fraudulent actions of defendant caused damage to Plaintiff

23   and members of the Class, who are entitled to damages and other legal and equitable relief as a

24   result."  (*Id.* ¶ 91.)  While not a model of clarity, the SAC request for injunctive relief appears to

25   be "a corrective advertising campaign."  (*Id.* ¶¶ 40, 48, 58.)  But as courts have repeatedly held,

26   Plaintiff is not entitled to a "corrective advertising campaign" where, as here, monetary damages

27   are sufficient to remedy any alleged harm.  *Stryker Corp.*, 2011 WL 2149095, at *3 (dismissing

28   UCL claim seeking injunctive relief "to prevent the continuation of such unfair business practices

1    by said defendants, and to require said defendants to notify patients and their physicians of the

2    true, scientifically based parameters of the quality and efficacy of the product."); *Adams v. I–Flow*

3    *Corp.*, 2010 WL 1339948, at *7 (C.D. Cal. Mar. 30, 2010) (striking with prejudice plaintiff's

4    request for injunction prohibiting pain pump and anesthetic manufacturers from false advertising);

5    *Gap, Inc.*, 238 F. Supp. 3d at 1204 (holding that plaintiff "cannot seek restitution or injunctive

6    relief under the UCL or FAL" because plaintiff had "an adequate legal remedy" in money

7    damages; *First Alert, Inc.*, 2014 WL 7248734, at *6 (dismissing UCL false advertising claim

8    based on failure to warn of alleged safety defect for smoke detectors "because [plaintiff] has an

9    adequate remedy at law in her claim for damages under the CLRA.").

10   Thus, because the SAC pleaded claims that may provide an adequate legal remedy, the

11   First, Second, Third, and Eighth Claims fail as a matter of law.  The Fourth and Seventh Claims

12   likewise fail to the extent equitable relief is demanded.

13   **C.    The Fifth Claim (Breach Of Implied Warranty) Is Futile Because There Is No
             Privity With Vega And The Vega Products Are Fit For Their Intended**

14   **Purpose.**

15   **1.    There is no Privity.**

16   The Fifth Claim (Breach of Implied Warranty) fails as a matter of law because the

17   proposed plaintiffs are end-consumers that purchased products from a retailer and cannot show

18   the requisite privity with Vega.  Under California law, "[t]he general rule is that privity of

19   contract is required in an action for breach of . . . implied warranty and that there is no privity

20   between the original seller and a subsequent purchaser who is in no way a party to the original

21   sale." *Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1058-59 (2008) (affirming

22   dismissal of warranty claim); *Martin v. Tradewinds Beverage Co.*, 2017 WL 1712533, at *11

23   (C.D. Cal. Apr. 27, 2017) (dismissing implied warranty claim because "Plaintiff has alleged no

24   facts supporting the inference that Plaintiff and Defendant were in vertical privity in regard to the

25   purchase of Iced Tea Products.").  In other words, "[a] buyer and seller stand in privity if they are

26   in adjoining links of the distribution chain.  Thus, an end consumer . . . who buys from a retailer

27   is not in privity with a manufacturer [and cannot state an implied warranty claim]." *Clemens v.*

28

DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO. 3:18-cv-04767-RS

1   *DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (affirming dismissal because "[a]

2   lack of vertical privity requires the dismissal of [plaintiff's] implied warranty claims.").

3       For example, in *Tradewinds Beverage Co.*, plaintiff filed a consumer class action alleging

4   that defendant falsely advertised "Iced Tea Products" as "all natural," notwithstanding that the

5   "Iced Tea Products contain a caramel color additive, which is an artificial ingredient."  2017 WL

6   1712533, at *1.  The court dismissed the implied warranty claim because plaintiff "alleged no

7   facts supporting the inference that plaintiff and defendant were in vertical privity in regard to the

8   purchase of Iced Tea Products.  Nor, based on the facts alleged, does it appear that Plaintiff could

9   do so.  Plaintiff alleges that she purchased the Iced Tea Products from retail stores and no contract

10  is alleged to have existed between the parties."  *Id.* at *11.  Thus, "in the absence of allegations

11  showing vertical privity between Plaintiff and Defendant, Plaintiff's claim for breach of the

12  implied warranty of merchantability must fail."  *Id.*

13      The SAC admits that Ms. Castelein "purchased at Andronico's and from Amazon.com"

14  and fails to allege where Mr. Valdez purchased his products.  (Dkt. 56-1 at 4-5, ¶¶ 7-8).  Thus, the

15  SAC makes it clear that the proposed plaintiffs are not in privity with Vega and the implied

16  warranty claims fail as a matter of law.

17          **2.      The SAC Cannot Plead That The Vega Products Are Unfit For Their**
                      **Intended Purpose.**
18

19      Even if the SAC alleged privity, the implied warranty claims still fail as a matter of law.

20  The implied warranty claim rests on the contention that the Vega Products are "unfit for their

21  intended purpose" because they allegedly contain levels of lead and cadmium above the

22  Proposition 65 levels.  (Dkt. 56-1 at 17, ¶ 71.)  These allegations cannot support a claim for

23  breach of implied warranty.  Where the claim alleges that a product is not fit for its intended

24  purpose, the plaintiff must show that it "did not possess even the most basic degree of fitness for

25  ordinary use."  *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003).  "The warranty

26  provides the consumer with only a *minimum* level of protection against product defects; it does

27  not guarantee a perfect product."  *Red v. Gen. Mills*, *Inc.*, 2015 WL 9484398, at *6 (C.D. Cal.

28  Dec. 29, 2015) (emphasis in original).

DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO. 3:18-cv-04767-RS

For example, in *Red v. Gen. Mills, Inc.*, the plaintiff alleged, among other things, a breach of implied warranty where the defendant-manufacturer's mashed potato products included "partially hydrogenated oils" that "cause immediate inflammation of internal organs upon consumption, and that such trans-fats increase the risk of coronary heart disease, type-2 diabetes, other cardiovascular diseases, and cancer." *Id.* at *1. The plaintiff further alleged that she "purchased and consumed Defendants' PHO-containing mashed potato products 'more than 20 times over the past four years.'" *Id.* The court, however, dismissed the implied warranty claim because "the inclusion of ingredients in a food product that causes inflammation of organs does not render the product totally unfit for the basic purpose of consumption." *Id.* at *6. The court further reasoned that "[w]hile a substantially increased risk of contracting cardiac disease following long-term consumption of such products could potentially breach the warranty of merchantability, Plaintiff lacks standing to assert claims based on such an injury" because plaintiff did not "show that such little consumption is sufficient to substantially increase her risk of contracting cardiac disease, or that after such an increased risk, the probability of then contracting cardiac disease is substantial." *Id.* at *4-6.

Other cases are in accord. *E.g., Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 527 (C.D. Cal. 2012) ("[a] breach of warranty cannot result if the product operates as it was intended to and does not malfunction during its useful life."); *Rossi v. Whirlpool Corp.*, 2013 WL 5781673 (E.D. Cal. Oct. 25, 2013) (dismissing implied warranty claim because the proper test for merchantability of refrigerator was its "ability to keep food cold rather than the ability to keep food cold while using 20% less energy than the national minimum."); *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *8 (N.D. Cal. Jun. 5, 2009) (plaintiff alleging defect caused mold to grow in bed failed to demonstrate unmerchantability where mold was not discovered for several years and no physical harm was alleged).

Indeed, when considering Vega's motion to dismiss the original complaint, this Court noted the alleged injury in this case is not failure to perform: "[Plaintiff] Bland argues he obtained less in the transaction than he should have, given Defendants' representations." (Dkt. 30 at 5.) The Court further noted that "[t]he question is not whether Bland is likely to suffer ill health

DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO. 3:18-cv-04767-RS

affects as a result of the Vega Products, but rather whether his purchase of the product based on misleading advertising harmed him.  Bland's assertion that he would not have purchased the Vega Products under the terms applicable at the time had he been aware of the cadmium and lead content is sufficient to establish injury-in-fact at the motion to dismiss stage."  (*Id.* at 5.)  Accordingly, because the claims in the SAC are not grounded in any reasonably certain physical harm, the proposed plaintiffs cannot plead an implied warranty theory.  In fact, Proposition 65, on which the SAC relies (Dkt. 56-1 at 6, ¶¶ 13-14) does not require that products with heavy metals levels exceeding permitted thresholds be pulled from the shelf—but rather that they include a warning.  *Envtl. Law Found. v. Beech-Nut Nutrition Corp.*, 235 Cal. App. 4th 307, 327 (2015), as modified on denial of reh'g (Apr. 16, 2015) ("The purpose of the data used in this case was not to conduct a product recall, but simply to determine whether Proposition 65 consumer warnings are or are not appropriate, regardless of the source of the ingredients that are used in the manufacturing process.").  Thus, even if the SAC's allegations were shown to be true, they would not support a claim of unfitness for consumption.

The heavy metal levels set by Proposition 65 themselves support this conclusion as well.  Under Proposition 65, the Office of Environmental Health Hazard Assessment sets a "safe harbor" level of exposure, known as the "no significant risk level" ("NSRL") for carcinogens, and the "maximum allowable dose levels" ("MADL") for reproductive toxins.  For carcinogens, a daily exposure level representing "no significant risk" is one which is calculated to result in one excess case of cancer in an exposed population of 100,000, "assuming lifetime exposure at the level in question."  Cal. Health & Safety Code § 25249.10; Cal. Code Regs. tit. 27, § 25703.  For reproductive toxins,[3] the daily exposure threshold is 1/1,000 of the exposure level at which there is no observable reproductive harm.  Cal. Health & Safety Code § 25249.10.  In other words, daily exposure levels at "***one thousand times***" more than the Proposition 65 safe harbor levels "will

---

[3] The SAC only alleges that the Vega Products exceed the MADL exposure levels for reproductive toxins.  (Dkt. 56-1 at ¶¶ 16-20.)  It does not address NSRL exposure levels.  Specifically, Plaintiff contends that between one and three servings of the Vega Products are required to exceed the MADL levels for lead and cadmium.  (*Id.*)

-17-

have **no observable effect**." *Id.* (emphasis added.)  Clearly, by its very definition, Proposition 65 exposure levels are far more conservative than what would be required to show harm in an individual exposure case, much less that products allegedly above those thresholds are "unfit for consumption."  Thus, the SAC has not plausibly alleged that the Vega products are unfit for consumption by exceeding the Proposition 65 safe harbor levels, and the implied warranty claims are futile.

> D. **The Sixth Claim (Strict Liability–Failure To Warn) Fails Because There Is No Physical Injury.**

The Sixth Claim styled "Strict Liability–Failure to Warn" fails for a similar reason:  that body of law is inapplicable where, as here, plaintiffs cannot show physical injury. "Under California law, a manufacturer may be strictly liable for physical injuries caused to person or property, but **not for purely economic losses**." *Fieldstone Co. v. Briggs Plumbing Prod., Inc.*, 54 Cal. App. 4th 357, 363-64 (1997) (emphasis added).  "'Economic' loss or harm has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property . . . .'" *Id.*  Further, that plaintiffs "may" suffer life-threatening injuries, without more, is insufficient to overcome the economic loss rule. *KB Home v. Superior Court*, 112 Cal. App. 4th 1076, 1087-88 (2003) (". . . the Supreme Court has unequivocally rejected such a life-safety exception to the economic loss rule: '[W]hether the economic loss rule applies depends on whether property damage has occurred rather than on the possible gravity of damages that have not yet occurred.'").

Here, as noted above, the SAC alleges pure economic loss in the form of overpayment. The SAC does not allege physical injury and the overpayment theory of harm cannot support strict liability. *Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, 2015 WL 4941780, at *7 (N.D. Cal. Aug. 19, 2015) (holding that the economic loss rule bars negligence and strict liability claims "premised on a 'failure to warn' theory"); *Ladore v. Sony Computer Ent. Am., LLC*, 75 F. Supp. 3d 1065, 1075 (N.D. Cal. 2014) ("[P]laintiffs seeking economic losses must be able to demonstrate that either physical damage to property (other than the defective product itself) or

-18-

personal injury accompanied such losses; if they cannot, then they would be precluded from any tort recovery in strict liability or negligence.").

Even assuming *arguendo* that the proposed plaintiffs could succeed in proving Proposition 65 thresholds are exceeded via consumption of the Vega products purchased, this would still not support a claim in strict liability or failure to warn.  First, a failure to warn about potential injury is not enough; an injury is required.  *Stearns v. Select Comfort Retail Corp*., 2009 WL 1635931, at *3 (N.D. Cal. June 5, 2009) (dismissing strict liability claim because plaintiff "makes no distinction between harm already suffered and harm that may be suffered in the future."); *Huitt v. S. California Gas Co.*, 188 Cal. App. 4th 1586, 1604 (2010) ("To be liable in California, even under a strict liability theory, the plaintiff must prove that the defendant's failure to warn was a substantial factor in causing his or her injury.").

Second, to demonstrate physical injury, California law "requires a higher level of proof of health risk than that required for inclusion of a substance on the Proposition 65 list."  *Riva v. Pepsico, Inc.,* 82 F. Supp. 3d 1045, 1061 (N.D. Cal. 2015) (dismissing product liability claims because plaintiff lacked Article III standing based on risk of cancer caused by exposure to carcinogen covered by Proposition 65).  Plaintiff must also show "what level of exposure in humans increases the risk of . . . cancer to above a non-speculative, credible level," and that plaintiff consistently consumed sufficient quantities of Vega products to exceed that level.  *Id.* at 1060.  The SAC fails to do either here.

**E.**     **The First, Second, Third, Fourth, Seventh, And Eighth Claims (Consumer Protection, Common Law Fraud, And Unjust Enrichment) Are Futile Because They Do Not Satisfy Rule 9(b). [4]**

Because the SAC is unmistakably "grounded in fraud," the claims "as a whole" must meet the rigorous standard of Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-1127 (9th Cir. 2009).  "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific

---

[4] Because the elements of the UCL, CLRA, common law fraud, and unjust enrichment claims largely overlap, Vega addresses those claims together as other courts have done.  *See, e.g., Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703, at *8 (C.D. Cal. Jan. 23, 2012), *aff'd*, 554 F. App'x 608 (9th Cir. 2014); *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) (holding that unjust enrichment claim based on same facts failing to state UCL claim must fail).

DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO. 3:18-cv-04767-RS

enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (quotations omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* When a proposed amendment fails to meet the standards of Rule 9(b), it is futile and leave to amend must be denied. *See Rambus, Inc. v. STMicroelectronics N.V.*, Case No. 10-05449, 2013 WL 12343708 (N.D. Cal. March 18, 2013) (denying leave to amend because fraud claim did not meet Rule 9(b) standards).

The SAC's formulaic recitations—that plaintiffs have been injured as a result of Vega's material misrepresentations and omissions—represent legal conclusions that the Court does not accept as true. Therefore, the fraud-based claims fail under Rule 9(b)'s heightened pleading standard.

The bald contention that the proposed plaintiffs relied on Vega's misrepresentations and omissions is improper because they have not identified, with specificity, the statements that the proposed plaintiffs personally viewed and relied on. Instead, the SAC vaguely alleges that they "relied on Defendant's false, misleading, and deceptive marketing of the Vega Products as a healthy product" without specifying the individual representations either of the proposed plaintiffs viewed. (see, e.g., Dkt. 56-1 at 4-5, ¶¶ 6-8.) The SAC identifies four separate Vega product lines, each of which are labeled differently, and alleges these statements collectively "convey a uniform representation that the Vega Products are healthy and provide consumers with what their bodies need." (*Id.* ¶21.) That is insufficient.

Without specifying the individual representations that the proposed plaintiffs viewed and relied on, the SAC has not adequately pled the "who, what, when, where, and how of the misconduct charged." *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1013-14 (N.D. Cal. 2014) (dismissing claim alleging plaintiff "reviewed . . . marketing materials and representations" and that his purchase was "based on those representations," but "fail[ed] to specify which, if any, of these statements [the plaintiff] personally reviewed and relied on") (internal quotations omitted); *Kearns v Ford Motor Company*, 567 F.3d 1120, 1124-26 (9th Cir. 2009) (dismissing nondisclosure claims under the UCL and CLRA where plaintiff alleged a fraudulent course of

-20-

DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO. 3:18-cv-04767-RS

1   conduct without complying with Rule 9(b)).

2       For instance, the SAC fails to meet Rule 9(b)'s pleading requirement because it has not

3   alleged facts sufficient to create a duty to disclose in the absence of an affirmative

4   misrepresentation.  To state a claim for "failing to disclose . . . under the CLRA or the UCL,

5   Plaintiffs must allege [among other things] . . . the existence of an unreasonable safety hazard."

6   *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017).  Only a

7   safety issue which rises to the level of an "unreasonable safety risk" can create a duty to disclose.

8   *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1029 (9th Cir. 2017); *Wilson v. Hewlett-Packard*

9   *Co.*, 668 F.3d 1136, 1143 (9th Cir. 2012) (". . . the District Court did not err in requiring Plaintiffs

10  to allege that the design defect caused an unreasonable safety hazard.").  This rule "applie[s] to a

11  manufacturer's duty of disclosure generally," and is not limited to "the product defect context."

12  *Carmen Otero, et al. v. Zeltiq Aesthetics, Inc. Additional Party Names: Abbey Lerman*, 2018 WL

13  3012942, at *3-5 (C.D. Cal. June 11, 2018).

14      The SAC, however, has not adequately alleged facts demonstrating the threshold of

15  exposure to lead and cadmium necessary to render Vega's alleged omissions actionable.  While

16  the SAC alleges in conclusory fashion that the concentration of lead and cadmium exceed the

17  Proposition 65 **safe harbor** threshold, it does not identify the level of concentration sufficient to

18  cause any harm, let alone serious harm resulting in an "unreasonable safety risk."  *Id.*; *see also*

19  *Browning v. Unilever United States, Inc.*, 2018 WL 6615064, at *3 (C.D. Cal. Dec. 17, 2018)

20  (dismissing consumer protection claims because of no duty to disclosure, and noting that "[i]t's

21  questionable whether" injuries such as "acne, infection and wrinkles . . . [and] inflammation and

22  irritation . . . [that] can accelerate the aging process"  would be "safety hazards"); *Potter v.*

23  *Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 989 (1993) (". . . nearly everybody is exposed to

24  carcinogens which appear naturally in all types of foods. Yet ordinary consumption of such foods

25  is not substantially likely to result in cancer.").

26      In other words, the SAC fails to recite the levels at which these metals supposedly trigger

27  any alleged harms as a general matter, and nowhere alleges that levels in the Vega products,

28  specifically, are similar.  Instead, the SAC alleges that consuming between one and three servings

-21-

1   of the Vega products "Exceed[s] the Maximum Allowable Dose" (MADL) under Proposition 65

2   by some unidentified amount.  (Dkt. 56-1 at 7, ¶16.)  But critically, as discussed above, the MADL

3   level is the daily exposure level that "will have no observable effect assuming exposure at one

4   thousand (1,000) times the level in question . . . ."  Cal. Health & Safety Code § 25249.10

5   (emphasis added).

6        In light of the SAC's contention that the Vega products exceed only the Proposition 65

7   safe harbor levels, which, in turn, are 1/1000 of the level at which there is "no observable" harm,

8   the SAC fails to plausibly allege a material safety risk necessary to state a claim for failure to

9   disclose.  *See Harris v. R.J. Reynolds Vapor Co.,* 2016 WL 6246415, at *2 (N.D. Cal. Sept. 30,

10  2016) (dismissing UCL claim because plaintiff "has not adequately alleged material omission

11  claims for formaldehyde or acetaldehyde information irrespective of Proposition 65."); *Delacruz*,

12  2012 WL 1215243, at *6 (dismissing challenge to product as unhealthy because "Plaintiff has not

13  alleged that the drink contains unhealthy amounts of fat . . . based on any objective criteria.");

14  *Smith v. Ford Motor Co.*, 462 Fed. Appx. 660, 663 (9th Cir. 2011) (affirming dismissal because

15  safety concerns related to an inability to start a vehicle were "too speculative, as a matter of law, to

16  amount to a safety issue giving rise to a duty of disclosure").

17        **F.    The UCL Claim Based On "Unfair" And "Unlawful" Conduct Fails.**

18        In addition to common law fraud, UCL fraud, and CLRA claims, the SAC asserts claims

19  under the UCL's "unlawful" and "unfair" prongs, but those claims fare no better as a matter of

20  law.

21        The UCL "unlawful" claim fails because it is predicated on various common law and

22  statutory fraud claims, each of which requires a misrepresentation.  (Dkt. 56-1 at ¶ 45.)  Thus, the

23  unlawful claim fails for the reasons above.

24        With respect to the "unfairness" claim, courts have held that where the unfair business

25  practices alleged under the unfair prong of the UCL overlap entirely with the business practices

26  addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot

27  survive if the claims under the other two prongs of the UCL do not survive.  *Punian v. Gillette*

28  *Co.*, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (holding that cause of action under the

DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO. 3:18-cv-04767-RS

unfair prong of the UCL did not survive where "the cause of action under the unfair prong of the UCL overlaps entirely with Plaintiff's claims" under the CLRA and fraudulent prong of the UCL); *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 Fed. Appx. 651 (9th Cir. 2011) (dismissing unfair prong UCL cause of action where "plaintiffs' unfair prong claims overlap entirely with their claims of fraud").

## V.     PLAINTIFF'S REQUEST SHOULD BE DENIED DUE TO PREJUDICE

Independently of the futility of the SAC's claims, Plaintiff's request should be denied because Plaintiff did not raise the issue of additional plaintiffs with the Court or Vega while the case schedule was being negotiated and revised. *See Ries v. Arizona Beverages USA LLC*, Case No. 10-01139 RS, 2013 WL 12172652 at *4 (N.D. Cal. Feb. 5, 2013) (finding bad faith when party withheld information from the Court).

Plaintiff Bland's Separate Case Management Statement to the Court makes no reference to amending his complaint to add additional plaintiffs; rather, the only amendments mentioned address Vega's motion to dismiss. (Dkt. 18 at 3:11-18). Similarly, the parties recently spent weeks negotiating a stipulation to continue certain deadlines in this case. Sperla Decl. at ¶ 5. Plaintiff did not raise the addition of two named plaintiffs during these discussions either. Had Plaintiff raised the addition of two new named plaintiffs, Vega would have sought additional time for discovery of these new plaintiffs prior to the class certification deadline. Sperla Decl. at ¶ 6.

Adding Mr. Valdez and Ms. Castelein now would prejudice Vega, needlessly increase time spent and costs incurred, and delay class certification and summary judgment briefing schedules in this case. While discovery has not yet closed, there is no dispute that the addition of two new plaintiffs will require extending the discovery period prior to class certification so that Vega can depose these new plaintiffs, collect documents regarding these plaintiffs and respond to their respective discovery requests.

All of this is wholly unnecessary. Plaintiff Bland concedes Mr. Valdez and Ms. Castelein seek to bring the same claims. (Dkt. 56 at 3:3-5). Unless Plaintiff is willing to admit that he is an inadequate class representative, then the addition of Mr. Valdez and Ms. Castelein as named plaintiffs is redundant and wasteful. Ms. Valdez and Ms. Castelein seek to assert the same claims,

DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND
CASE NO. 3:18-cv-04767-RS

are represented by the same attorneys, and fail to set forth anything that makes them better class representatives than Plaintiff. Furthermore, both of their interests are protected in the event the Court denies class certification because such a ruling would not deprive them of any individual claims they might have.

**VI.    CONCLUSION**

Plaintiff's proposed amendment is futile because the claims asserted are flawed and should be dismissed as a matter of law.  In addition, Plaintiff's proposed amendment is prejudicial to Vega.  For these reasons, Plaintiff's request for leave to amend must be denied.

Dated:  June 24, 2019                              DLA PIPER LLP (US)


By:  /s/ Tamany Vinson Bentz
        ANGELA C. AGRUSA
        GREGORY SPERLA
        TAMANY VINSON BENTZ
        Attorneys for Defendant
        SEQUEL NATURALS, ULC